```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
CELESTE GREEN, individually and as parent and              :
natural guardian of ALIA GREEN; MARSCHELL                  :
RUGGS, individually and as parent and natural              :
guardian of ASHLEY VICTORIA RUGGS; and                     :
JONATHAN and RANDI BOLOS, individually                     :
and as parents and natural guardians of LAUREN             :
BOLOS,                                                     :
                                                           :
              Plaintiffs,                   :   MEMORANDUM AND ORDER
                                                           :
              -against-                     :   05-CV-0429 (DLI)(ETB)
                                                           :
THE CITY OF NEW YORK; THE CITY              :
OF NEW YORK DEPARTMENT OF SOCIAL            :
SERVICES HUMAN RESOURCES                    :
ADMINISTRATION, and VERNA EGGLESTON,        :
                                                           :
              Defendants.                   :
-----------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs Celeste Green, Marschell Ruggs, and Jonathan and Randi Bolos (collectively, "parent plaintiffs") filed a class action complaint individually and on behalf of their respective children, Alia Green, Ashley Victoria Ruggs, and Lauren Bolos (collectively, "infant plaintiffs") as individual plaintiffs and representatives of a purported class against the City of New York, the City of New York Department of Social Services Human Resources Administration ("HRA"), and Verna Eggleston, the Commissioner of the HRA ("Commissioner Eggleston"). The plaintiffs are disabled children and their parents who have received assistance under the Medicaid program. Plaintiffs claim that Medicaid liens asserted by the City of New York against awards from personal injury actions they instituted improperly included monies paid for federally-mandated educational services

1

that were required to be provided free of charge. Plaintiffs allege violation of (1) their equal protection and due process rights under 42 U.S.C. § 1983, (2) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., (3) the New York State Education Act, N.Y. EDUC. LAW § 4000 et seq., (4) the New York State Constitution, (4) N.Y. Social Services Law § 367–a(2)(b), and (5) common law negligence.

Defendants move to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1), on grounds that the court lacks subject matter jurisdiction over the instant matter, and under Fed. R. Civ. P. 12(b)(6), arguing that the plaintiffs do not have standing, that there is no private right of action under N.Y. Social Services Law § 367–a(2)(b), and that the parent plaintiffs' claims are barred by the statute of limitations. For the reasons set forth below, defendants' motion to dismiss under Rule 12(b)(1) is denied. Defendants' 12(b)(6) motion to dismiss is denied with respect to lack of standing but granted as to the claim under N.Y. Social Services Law § 367–a(2)(b), which is dismissed. Furthermore, the court finds that the parent plaintiffs' individual claims are barred by the statute of limitations, and the parent plaintiffs will continue in this action solely as representatives of the infant plaintiffs.

## I.     Facts

The infant plaintiffs are children "with a disability" as defined under the IDEA, *see* 20 U.S.C. § 1401(3), who have received or are now receiving medical assistance from the City of New York's Medicaid plan,[1] established pursuant to Title XIX of the Social Security Act. The IDEA was enacted

---

[1] Medicaid, a jointly funded federal and state medical assistance program, pays the medical costs of qualifying indigent individuals whose income and resources are

2

"to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).[2] The infant plaintiffs, since reaching pre-school age, have attended school and received from local school districts certain "special education and related services" under the IDEA (hereinafter "Related Services"). The Related Services provided under each infant plaintiff's "individualized education program" under the IDEA include physical therapy, speech therapy, counseling, occupational therapy, and transportation to and from school on specially-equipped and

---

insufficient to meet the costs of their medical care. Established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* and implemented in New York State by the Social Services Law § 267 *et seq.,* Medicaid is administered in New York City by the Human Resources Administration ("HRA") under the supervision of the New York State Department of Health.

*Mejia v. City of New York*, No. 01 Civ. 3381, 2004 WL 2884407, at *1 (S.D.N.Y. Dec. 10, 2004).

[2] The IDEA defines "free appropriate public education" as "special education and related services" that

(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). An "individualized education program" is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section" and includes statements regarding, *inter alia*, the child's present level of educational performance, yearly goals, and special education and related services to be provided. *Id*. § 1414(d)(1).

For an "infant or toddler with a disability," defined by the IDEA as a child under three years who is experiencing certain developmental delays, "early intervention services" must be provided at no cost. *Id*. § 1432(4)–(5).

staffed vehicles. The individualized education programs were ratified and adopted by the school districts responsible for the infant plaintiffs' education. Plaintiffs allege that claims for the payment of some or all of the Related Services provided to the infant plaintiffs were made to the infant plaintiffs' school districts or educational institutions. After paying the claims, the school districts and educational institutions were reimbursed by the HRA.

When the parent plaintiffs filed personal injury actions to recover against the parties that allegedly caused the infant plaintiffs' disabilities, the HRA imposed liens pursuant to N.Y. Social Services Law §104–b to recover the City of New York's Medicaid expenditures. In each case, some or all of the lien amount asserted was satisfied and subtracted from personal injury proceeds pursuant to a settlement approved by an infant compromise order. Plaintiffs claim that HRA included in the lien calculations the amounts paid to reimburse school districts and educational institutions for Related Services. Thus, plaintiffs allege that because they relied on inaccurate lien amounts when negotiating their settlements, and, in other cases, paid the full lien amount, defendants deprived them of the "free appropriate public education" to which they are entitled under the IDEA. Plaintiffs assert this claim on behalf of both a paying subclass, comprised of those who have settled or paid in full the Medicaid liens that included costs for Related Services, and a non-paying subclass, comprised of those who have not yet resolved their personal injury claims but have improperly inflated Medicaid liens asserted against them. As remedy, plaintiffs request that the defendants return all monies the City of New York and HRA collected for Related Services and that the court enter an order enjoining defendants from future attempts to collect funds for Related Services.

*Lauren Bolos*

Lauren Bolos ("Lauren") was born on May 2, 1990 and suffers from cerebral palsy, brain damage, impaired motor function and coordination, and a seizure disorder that requires medication. Lauren received Medicaid assistance and Related Services. Sometime shortly before January 1992, Lauren's parents and natural guardians, Jonathan and Randi Bolos, instituted a personal injury action in New York State Supreme Court, Richmond County, against several defendants, including Staten Island Hospital and three of the doctors who performed the delivery of Lauren. Prior to the settlement of the action, HRA placed a Medicaid lien on proceeds expected from the personal injury action. According to an affidavit submitted by Jonathan Bolos in support of the Bolos' application for state court approval of the settlement, the lien was for approximately $1,300,000. The Bolos reached a settlement agreement with one of the defendant doctors in the amount of $1,825,000. Pursuant to the settlement, $600,000 was paid to HRA for full reimbursement of the Medicaid lien. On February 23, 2000, the settlement and infant compromise order was entered in state court.

*Alia Green*

Alia Green ("Alia") was born on July 16, 1993 with severe brain damage affecting her motor and cognitive skills and functions. She suffers from hearing loss, developmental delays, and a seizure disorder that requires medication. Alia received Medicaid assistance and Related Services pursuant to the IDEA. Around January 1995, Alia's parent and natural guardian, Celeste Green, instituted a personal injury action in New York State Supreme Court, Kings County, against Interfaith Hospital and three of the doctors who performed the delivery of Alia. Prior to the settlement of the action, HRA placed a Medicaid lien on expected proceeds in the action in the amount of $7,875.15, covering Medicaid expenses from November 13, 1999 to July 6, 2000. The

Greens reached a settlement with the hospital and one of the doctors in the amount of $3,250,000 and with third-party defendant New York City Health and Hospitals Corporation in the amount of $500,000. Payment of $7,875.15 was made to HRA to satisfy the lien. The settlement and infant compromise order was entered in state court on September 26, 2000.

### *Ashley Victoria Ruggs*

Ashley Victoria Ruggs ("Ashley") was born on November 30, 1993. As a result of complications from birth, she is mentally retarded and physically disabled. She also suffers from a seizure disorder that requires medication. Ashley received Medicaid assistance and Related Services pursuant to the IDEA. Around February 1995, Ashley's parent and natural guardian, Marschell Ruggs, instituted a personal injury action in New York State Supreme Court, Kings County, against several defendants, including New York City Health and Hospitals Corporation and two of the doctors who performed Ashley's delivery. Prior to the settlement of the action, HRA placed a Medicaid lien on any proceeds to be recovered in the personal injury action. According to an affidavit submitted by Marschell Ruggs to seek state court approval of the settlement, the lien was for $600,000. The action was settled on February 24, 2000 for $1,750,000, and HRA accepted $600,000 for full satisfaction of the lien—$200,000 to be paid immediately, and $400,000 to be paid upon Ashley's death. The settlement and infant compromise order was entered in state court on March 28, 2000.

## II. Standards of Review

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court accepts as true all factual allegations in the plaintiff's complaint. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). However, "inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* A case is properly dismissed under 12(b)(1) when "the district court lacks statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). It is the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court also accepts as true all well-pleaded factual allegations, but, in contrast to a 12(b)(1) motion, draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In deciding the motion, the court may consider documents upon which the plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). A motion to dismiss under 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

**III.   *Rooker-Feldman***

Defendants argue that, under the *Rooker-Feldman* doctrine, the court lacks subject matter jurisdiction to consider plaintiffs' claims.  The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).  The *Rooker-Feldman* doctrine thus applies where four requirements are met: the federal-court plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  While the first and last requirements are procedural, the second and third are substantive. *Id*.

The procedural requirements are met in this case.  Plaintiffs commenced the instant action after state courts approved the settlements.  While it may not appear that plaintiffs "lost in state court," since they received substantial settlement proceeds, courts have treated settlement agreements as final judgments for the purpose of the *Rooker-Feldman* doctrine.  *See Allianz Ins. Co. v. Cavagnuolo*, No. 03 Civ. 1636, 2004 WL 1048243, at *6 (S.D.N.Y. May 7, 2004). Moreover, rather than putting the court in the position of evaluating subjectively whether a settlement should be considered a loss, it seems sufficient for plaintiffs to allege that the court-approved settlements somehow violated their rights.  Whether the *Rooker-Feldman* doctrine applies thus turns on the substantive requirements.

The Court in *Exxon Mobil* recently clarified and narrowed the reach of the *Rooker-Feldman*

doctrine, holding that whether it applies is a separate question from preclusion law. *See* 544 U.S. at 283–84. The broadening of the *Rooker-Feldman* doctrine that *Exxon Mobil* criticized stemmed from language in *District of Columbia Court of Appeals v. Feldman*, stating that the federal court lacks subject matter jurisdiction over claims asserted before it that are "inextricably intertwined" with the state court judgment. 460 U.S. 462, 482 n.16, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *see Hoblock*, 422 F.3d at 86. In *Moccio v. New York State Office of Court Admin.*, which has since been overruled, the Second Circuit held that

> the Supreme Court's use of 'inextricably intertwined' [in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)] means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion.

95 F.3d 195, 199–200 (2d Cir. 1996), *overruled by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Following *Exxon Mobil*, the Second Circuit explained in *Hoblock* that "the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*." 422 F.3d at 87.

The Court stated in *Exxon Mobil* that a federal court does not lose subject-matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." 544 U.S. at 293. For example, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). The Second Circuit has remarked: "Precisely what this means is not clear from either

*Exxon Mobil* or *GASH Associates* . . . , but it suggests that a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker-Feldman*." *Hoblock*, 422 F.3d at 87. Furthermore, "a federal suit is not free from *Rooker-Feldman*'s bar simply because the suit proceeds on legal theories not addressed in state court." *Id*.

The first question is whether the plaintiffs seek to review and reverse the state court judgments. *See Hoblock*, 422 F.3d at 87. Though the plaintiffs do not ask for rescission of the settlement agreements or for this court to review the state courts' reasoning in approving the settlements, the plaintiffs do ask for return of part of the monies that were specified in and ordered pursuant to the settlement agreements. Thus, it appears that plaintiffs seek a reversal of the settlement amounts approved. *See id*. As *Hoblock* instructs, since seeking in federal court a result opposite of the one attained in state court does not automatically bar a claim under the *Rooker-Feldman* doctrine, analyzing the second substantive *Rooker-Feldman* requirement—"that federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment"—is the key. *Id*. "Indeed, this is the core requirement from which the others derive; focusing on it helps clarify when the doctrine applies." *Id*.

In analyzing the cause of the injury alleged, *Hoblock* further instructs:

[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

422 F.3d at 88. Furthermore, it is relevant for the court to consider the allegations in plaintiffs' complaint and records from the state-court proceedings. *See id*. In the instant case, plaintiffs

essentially claim that defendants violated their rights by misrepresenting the true amounts to which HRA was entitled when asserting Medicaid liens against the plaintiffs' personal injury actions. Plaintiffs allege that "contrary to law, defendants have engaged in a structural and systemic failure to distinguish between Related Services and non-Related Services in seeking and obtaining reimbursement from children who have received Medicaid benefits and later obtain awards or settlements relating to personal injury actions." (Compl. ¶ 91.) Plaintiffs also allege that "it remains the formal or *de facto* policy of New York City and HRA to assert improper and inflated liens against the proceeds of personal injury claims and causes of action belonging to members of the plaintiff class."[3] (*Id.* ¶ 92.) During the state court proceedings, the plaintiffs never questioned the validity of the liens. Although raising a new legal theory does not by itself circumvent a *Rooker-Feldman* jurisdictional bar, in this case the injury plaintiffs allege was not caused by the state court judgments. The state courts did not miscalculate the lien amounts but instead, by approving the settlements, at most only "ratif[ied], acquiesce[d] in, or [left] unpunished an anterior decision" by the City of New York. As the *Rooker-Feldman* doctrine does not bar the present suit, the court next analyzes whether ordinary preclusion law applies.

## IV.    Claim Preclusion

"*Exxon Mobil* teaches that the narrow *Rooker-Feldman* inquiry is distinct from the question whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit." *Hoblock*, 422 F.3d at 92. Defendants assert that plaintiffs' suit is barred by claim

---

[3] Defendants claim that such a policy no longer exists, however, on this motion, the court accepts the allegations in plaintiffs' complaint as true.

preclusion.

The Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, which is implemented by 28 U.S.C. § 1738, requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist.*, 465 U.S. 75, 80–81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). To determine whether claim preclusion applies, the court follows the "transactional analysis approach" adopted by the New York Court of Appeals, which "preclude[s] the litigation of matters that could have or should have been raised in a prior proceeding arising from the same factual grouping, transaction, or series of transactions." *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997) (citations and internal quotation marks omitted). In order for claim preclusion to apply, the federal suit must also involve the same parties as in the prior state judgment, or parties in privity to them. *Id.* Under New York law, privity "includes those who are successors to a property interest, *those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action*." *Id.* (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)).

The instant matter is not barred by claim preclusion because there is no privity between the parties. Defendants City of New York, HRA, and Commissioner Eggleston were not parties to the personal injury actions as to which the state court settlements were approved. Nor are there allegations that the defendants controlled any parties to the state court personal injury actions. The defendants' interests were not represented by the doctors and hospitals sued by the plaintiffs in their personal injury actions. Indeed, as the interests of the defendant hospitals and doctors undoubtedly would be to avoid liability altogether or settle for as little as possible, such interests would be

12

adverse to the City of New York and HRA's interest in satisfying the liens.

Defendants argue that privity exists because participation by the City of New York and HRA was required in the infant compromise proceedings. However, tangential participation without shared interests in the litigation is insufficient for establishing privity. *See, e.g*, *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995) (no privity between vessel from earlier *in rem* action and defendant Empresa where, in earlier action, Empresa had assisted vessel in a representative capacity and was later sued *in personam*); *see also* Restatement (Second) of Judgments § 39 cmt. e, *quoted in Central Hudson*, 56 F.3d at 368 ("[A] trustee who takes control of litigation involving another in order to protect the trust is not on that account bound in a subsequent action in which he appears in his individual capacity."); *cf. Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 877 (2d Cir. 1991) ("the law is well-settled on applying res judicata to third parties whose interests were represented by those closely aligned to them").

With regard to defendants' argument that any challenge to the accuracy of the lien amounts could have been made before the settlements were approved, "the question is not whether the applicable procedural rules *permitted* assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). Whether the defendants have or had a policy of calculating Medicaid liens based on impermissible purposes and made material misrepresentations regarding the proper lien amounts, as plaintiffs allege, are claims based upon the plaintiffs' post-settlement discovery of the alleged misrepresentations. Plaintiffs also assert their claims on behalf of a non-paying subclass composed

of persons who have not yet resolved their personal injury actions and have been or will be subject to an improperly calculated Medicaid lien. These claims are sufficiently separate from the underlying personal injury action settlements. Thus, the present suit is not barred by claim preclusion principles.

**V.      Standing**

There are three elements necessary to show the "irreducible constitutional minimum of standing":

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal footnote, citations, and quotation marks omitted)).

Defendants argue that plaintiffs' case should be dismissed for lack of standing because "plaintiffs cannot show that they have a legally particularized interest in the settlement proceeds." (Defs.' Mem. at 21.) This argument is unsuccessful. In *Cricchio v. Pennisi*, the New York Court of Appeals held that the Department of Social Services is entitled to satisfy Medicaid liens placed on potential personal injury settlements, pursuant to N.Y. Social Services Law § 104–b, before funds are transferred to a supplemental needs trust. 90 N.Y.2d 296, 302 (1997). However, as has been noted by at least one court, plaintiffs' claims regarding the disputed lien amounts do not run contrary

14

to *Cricchio*. *See Mejia*, 2004 WL 2884407, at *5. Indeed, as explained in *Mejia*, as HRA's lien recovery is limited to "medical expenses," and plaintiffs assert that this limit was crossed by the inclusion of funds spent on Related Services, "plaintiffs did not assign that money to Medicaid. Rather, they retained their property interests in the disputed amounts." *Id*.; *see also Andree v. County of Nassau*, 311 F. Supp. 2d 325, 335 (E.D.N.Y. 2004) (court found that Medicaid recipients alleging violation of, *inter alia*, IDEA and procedural due process, on theory that liens improperly included amounts for Related Services, had cognizable property interest).

**VI.     New York Social Services Law § 367–a(2)(b)**

Defendants move to dismiss plaintiffs' fifth cause of action, violation of N.Y. Social Services Law § 367–a(2)(b), arguing that there is no private right of action under this section. Section 367–a(2)(b) provides:

> Any inconsistent provision of this chapter or other law notwithstanding, upon furnishing assistance under this title to any applicant or recipient of medical assistance, the local social services district or the department shall be subrogated, to the extent of the expenditures by such district or department for medical care furnished, to any rights such person may have to medical support or third party reimbursement. For purposes of this section, the term medical support shall mean the right to support specified as support for the purpose of medical care by a court or administrative order. The right of subrogation does not attach to insurance benefits paid or provided under any health insurance policy prior to the receipt of written notice of the exercise of subrogation rights by the carrier issuing such insurance, nor shall such right of subrogation attach to any benefits which may be claimed by a social services official or the department, by agreement or other established procedure, directly from an insurance carrier. No right of subrogation to insurance benefits available under any health insurance policy shall be enforceable unless written notice of the exercise of such subrogation right is received by the carrier within two years from the date services for which benefits are provided under the policy or contract are rendered. The local social services district or the department shall also notify the carrier when the exercise of subrogation rights has terminated because a person is no longer receiving assistance under this title. Such carrier shall

> establish mechanisms to maintain the confidentiality of all individually identifiable information or records. Such carrier shall limit the use of such information or record to the specific purpose for which such disclosure is made, and shall not further disclose such information or records.

As this section does not mention any right of particular Medicaid recipients to monitor the propriety of subrogation rights asserted by the Department of Social Services, plaintiffs will only have a private right of action where "a legislative intent to create such a right of action is 'fairly implied' in the statutory provisions and their legislative history." *Carrier v. Salvation Army*, 88 N.Y.2d 298, 302 (1996) (quoting *Hoxie's Painting Co. v. Cato-Meridian Cent. Sch. Dist.*, 76 N.Y.2d 207, 211 (1990)). The court must consider three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (quoting *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 633 (1989)).

Article 5 of the N.Y. Social Services Law implements the federal Medicaid program in New York State. N.Y. Social Services Law § 364 vests responsibility for "establishing and maintaining standards for medical care and eligibility" to the Department of Social Services and the Department of Health. While the former is responsible for eligibility determinations, auditing payments, and publishing and distributing information about the program, the latter is responsible for tasks such as establishing and maintaining medical facility and services standards, as well as "making policy, rules and regulations for maintaining a system of hearings for applicants and recipients." N.Y. Soc. Serv. Law § 364.

Though allowing private citizens to monitor the propriety of actions taken by the City of New

York in administering the Medicaid program would be consistent with the statute's overall scheme of ensuring that appropriate medical assistance is provided to all citizens, "regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned *if it is incompatible with the enforcement mechanism chosen by the Legislature.*" *Carrier*, 88 N.Y.2d at 303–04 (quoting *Sheehy*, 73 N.Y.2d at 634–35 (emphasis added)). As enforcement of the Medicaid program is clearly designated to the Department of Social Services and the Department of Health, the court thus finds that there is no private right of action under N.Y. Social Services Law § 367–a(2)(b).

## VII.   Statute of Limitations & Notice of Claim

Defendants assert a statute of limitations defense against the parent plaintiffs' claims only. There is no statute of limitations specifically prescribed by the IDEA. Where, as here, a statute is silent as to statute of limitations, and was enacted prior to December 1, 1990,[4] the court applies "the state law of limitations governing an analogous cause of action." *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). The most logical connection seems to apply New York's three-year statute of limitations for personal injury actions,[5] which also governs

---

[4] Pursuant to 28 U.S.C. § 1658: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

[5] At least one court, in concluding that a three-year statute of limitations should apply in actions under the IDEA, has relied on N.Y. C.P.L.R. § 214(2), which prescribes three years for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." *See Mason v. Schenectady City Sch. Dist.*, 879 F. Supp. 215, 220 (N.D.N.Y. 1993). However, there is an exception under § 214(2) for N.Y. C.P.L.R. § 213, which prescribes six years for "an action for which no limitation is specifically prescribed by law."

actions under 42 U.S.C. § 1983.[6] *See, e.g.*, *BD v. DeBuono*, 130 F. Supp. 2d 401, 424 (S.D.N.Y. 2000). Thus, as plaintiffs' claims in the instant case accrued at the latest around 2000 when the infant compromise orders were entered, and their complaint was filed in 2005, the parent plaintiffs' individual capacity claims are barred.

With regard to defendants' argument that plaintiffs' state law claims should be dismissed because plaintiffs did not file a notice of claim under N.Y. General Municipal Law § 50–e, the notice of claim requirement is excused for "actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group." *Mills v. Monroe County*, 59 N.Y.2d 307, 311 (1983); *see Kennedy v. Fitzgerald*, 102 F. Supp. 2d 100, 102 (N.D.N.Y. 2000). As a potential class action that seeks to vindicate the rights of Medicaid recipients whose liens against their personal injury actions allegedly included improper amounts for Related Services, the instant action falls within the public interest exception, and plaintiffs are excused from the notice of claim requirement.

**VIII. Conclusion**

For the reasons discussed above, defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is denied. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is denied with respect to lack of standing but granted as to the claim under N.Y. Social Services Law § 367–a(2)(b), which is dismissed. Defendants' 12(b)(6) motion to dismiss the parent plaintiffs' claims because of expiration of the statute of limitations is granted. The caption

---

[6] If this case had involved an appeal from an administrative decision, a four-year statute of limitations would apply. *See Mason*, 879 F. Supp. at 219–20.

shall be amended by the Clerk of the Court to reflect that Celeste Green, Marschell Ruggs, and Jonathan and Randi Bolos are not suing individually but only on behalf of their infant children, Alia Green, Ashley Victoria Ruggs, and Lauren Bolos, respectively.

SO ORDERED.

DATED: Brooklyn, New York
July 17, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge