UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
CELESE GREEN, as Parent and Natural Guardian of
ALIA GREEN, MARSCHELL RUGGS, as Parent and
Natural Guardian of ASHLEY VICTORIA RUGGS,
and JONATHAN and RANDI BOLOS, as Parents and
Natural Guardians of LAUREN BOLOS,

                Plaintiffs,                              <u>REPORT AND</u>
                                                              <u>RECOMMENDATION</u>

     -against-                                     CV 05-429 (DLI) (ETB)


THE CITY OF NEW YORK, THE CITY OF NEW
YORK DEPARTMENT OF SOCIAL SERVICES
HUMAN RESOURCES ADMINISTRATION, and
VERNA EGGLESTON,,

                Defendants.
----------------------------------------------------------------------x

TO THE HONORABLE DORA L. IRIZARRY, UNITED STATES DISTRICT JUDGE:

      Before the Court is the plaintiffs' application for attorney's fees in the amount of $6.75

million and costs amounting to approximately $10,000. Defendants oppose plaintiffs'

application, asserting that the requested fee award should be reduced on the grounds that,

<u>inter</u> <u>alia</u>, the fees sought are excessive, the hourly billing rates are unreasonable, the billing

entries are vague, and the costs are unwarranted. For the reasons that follow, I recommend that

plaintiffs be awarded attorney's fees and costs in the amount of $828,169.99.


<u>FACTS</u>

      Familiarity with the underlying facts of this action is assumed. By a Stipulation and

Order of Settlement, dated May 1, 2008, the parties entered into a settlement fully resolving all

of the causes of action asserted by the plaintiffs.  The settlement was approved by Judge Irizarry

and a judgment was entered in this action on November 7, 2008.

The only remaining issue is the amount of attorney's fees and costs to be provided to

plaintiffs' class counsel.  Plaintiffs seek almost $7 million in fees and expenses and assert that

such fees should be awarded pursuant to a common fund theory of recovery.  Defendants

challenge plaintiffs' application, arguing that a common fund theory of recovery is not

appropriate.  Rather, defendants assert that plaintiffs' counsel should be awarded fees pursuant to

either the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., or

Section 1988 of the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983").  Defendants further

assert that any fees awarded to plaintiffs' counsel should be reduced based on a number of

factors, including, inter alia, unreasonable hourly billing rates, vague billing entries, and

unwarranted costs.


DISCUSSION

I.       The Method for Calculating Attorney's Fees

The central dispute between the parties herein is which method should be used to

calculate plaintiffs' attorney's fees.  Plaintiffs assert that they are entitled to have their attorney's

fees awarded pursuant to a "common fund" or "percentage of the fund" method of calculation.[1]

Plaintiffs base their request on Rule 23(h) of the Federal Rules of Civil Procedures, which

---

[1]  However, plaintiffs do not waive their right to receive attorney's fees pursuant to the
lodestar method, should the Court find that to be the proper method of calculation.  (Pl. Am.
Supplemental Submission 1-2.)

empowers a court to award "reasonably attorney's fees" in class actions. Fed. R. Civ. P. 23(h). Under this approach, plaintiffs request that they be awarded $6.75 million in attorney's fees and $9,827.31 in expenses, which amounts to approximately fifteen percent (15%) of the settlement reached in this action.[2]

Defendants, however, assert that attorney's fees should be calculated according to the lodestar method[3] since, by virtue of the settlement reached, plaintiffs may correctly be considered prevailing parties under either the IDEA or the Civil Rights Act, the two main causes of action asserted by plaintiffs in this action. Both statutes contain fee-shifting provisions whereby prevailing parties are entitled to reasonable attorney's fees and expenses. For the following reasons, I agree with defendants and recommend that plaintiffs' attorney's fees be calculated according to the lodestar method.

Although plaintiffs assert that a common fund method of calculation is appropriate here because this is a class action, they are unable to point to a single case where fees were calculated using that method in an IDEA action. Rather, they rely on a litany of securities and antitrust cases as support for their position, none of which are applicable to the within action. In fact, a footnote by the Supreme Court in Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546 (1986), suggests that the common fund theory only applies in securities and antitrust litigation, and therefore would not be suitable in a case such as the within one. See id. at 562 n.6

---

[2] The attorney's fees to date in this action amount to $1,548.437.50

[3] The Second Circuit recently abandoned use of the term "lodestar," replacing it with the phrase "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 169 (2d Cir. 2007). However, the court specifically stated that it did "not purport to require future panels . . . to abandon the term" because "it is too well entrenched." Id. at 169 n.2. Accordingly, either term is acceptable.

(noting that one exception to the "American Rule" of attorney's fees is where fees are awarded "in commercial litigation to plaintiffs who recovered a 'common fund' for themselves and others through securities or antitrust litigation") (citing <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 257 (1975)).  Even more notably, by plaintiffs' own admission - simply recognizing what is obvious - no "common fund" has been created here.  (Pl. Mem. of Law 12 (stating that "an actual segregated fund was not created."))  Such a fact makes this action unsuitable for the application of a common fund method of calculation.

Plaintiffs argue that "this is not a 'civil rights or IDEA action,'" but rather that it is a "class action seeking damages for the City's wrongful conduct in depriving class members of money that was rightfully theirs."  (Pl. Reply Mem. of Law 4.)  I find this argument disingenuous and devoid of any merit.  The Complaint in this action specifically states that it is brought pursuant to the IDEA.  (Compl. ¶ 1.)  Moreover, jurisdiction for this action in federal court is founded on both the IDEA and 42 U.S.C. § 1983.  (<u>Id.</u> ¶ 8 (stating that "claims are asserted under . . . 42 U.S.C. § 1983, in that claims are asserted under laws provided for the protection of civil rights . . . and the IDEA . . . in that this action presents claims under the IDEA."))  Although plaintiffs' Complaint also contains four pendent state law causes of action, the thrust of this action alleges claims under the IDEA and Section 1983, and accordingly, fees should be calculated according to the fee-shifting provisions contained in those statutes.[4]

_____

[4] Further support that the common fund doctrine is not applicable in cases brought under Section 1983 or the IDEA can be found in the Supreme Court's decision in <u>Blum v. Stevenson</u>, 465 U.S. 886 (1984), wherein the Court stated that "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 [the fee-shifting provision of Section 1983] reflects the amount of attorney time reasonably expended on the litigation."  <u>Id.</u> at 903 n.16.

II.     Attorney's Fees Under the IDEA and the Civil Rights Act

The fee-shifting provision of the IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party . . . ." 20 U.S.C. § 1415(i)(3)(B); see also A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 67 (2d Cir. 2005) ("The IDEA grants courts the discretionary power to 'award reasonable attorneys' fees . . . [to] the prevailing party' 'in any action or proceeding brought under' the IDEA.") (alteration in original). "The Second Circuit has made clear that interpretation of the IDEA's fee shifting provision is governed by those standards applicable to the issuance of attorneys' fees in federal civil rights actions under 42 U.S.C. § 1988(b)." C.B. and R.B. v. New York City Dep't of Educ., No. 02 CV 4620, 2006 U.S. Dist. LEXIS 68649, at *3 (E.D.N.Y. Sept. 25, 2006) (citing A.R. ex rel. R.V., 407 F.3d at 73 n.9); see also I.B. and E.B. v. New York City Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) ("We interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes.").

"Within the Second Circuit, the lodestar method is used to ascertain reasonable attorney's fees in civil rights cases." Lawson v. City of New York, No. 99 Civ. 10393, 2000 U.S. Dist. LEXIS 15709, at *2 (S.D.N.Y. Oct. 26, 2000) (citations omitted); see also Quaratino v. Tiffany & Co., 166 F.3d 422, 427 (2d Cir. 1998) (vacating and specifically rejecting district court's attempt to depart from the lodestar method in determining attorney's fees pursuant to Title VII). Courts have repeatedly applied the same procedure to cases brought pursuant to the IDEA. See, e.g., I.B. and E.B., 336 F.3d at 81 (affirming district court's use of the lodestar method in an IDEA case and stating "[w]e have repeatedly held that we apply the full [Hensley v. Eckerhart, 461 U.S. 424 (1983)] procedure to IDEA fee awards"); R.F. ex rel. G.M. v. New Britain Bd. of

Educ., 173 F.3d 77, 84 (2d Cir. 1999) (stating that "the district court's analysis should follow the 'lodestar' approach in an IDEA case); C.B. and R.B., 2006 U.S. Dist. LEXIS 68649, at *7 (stating, in an IDEA action, that "[i]n calculating the proper measure of a fee award, courts first determine a 'lodestar' figure").

III.    The Presumptively Reasonable Fee

As stated above, attorney's fees are determined in the Second Circuit by calculating the "presumptively reasonable fee," or the "lodestar" figure.  Arbor Hill, 493 F.3d at 118; Baruch v. Healthcare Receivable Mgmt., Inc., No. 05-CV-5392, 2007 U.S. Dist. LEXIS 80429, at *15 (E.D.N.Y. Oct. 29, 2007).  The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 453 (1983).

The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed.  See id. at 433; Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'").  Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done."  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  If the documentation is inadequate, the court may reduce the award accordingly.  See Hensley, 461 U.S. at 433-34; Molefi v. The Oppenheimer Trust, No. 03 CV

5631, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb. 15, 2007) ("If such records are inadequate the Court may reduce the award accordingly.") (quotation omitted).

A.   Calculating the Reasonable Hourly Rate

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[5] Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). The court "may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community." Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179, 2006 U.S. Dist. LEXIS 8381, at *4-5 (S.D.N.Y. Feb. 24, 2006) (citing Miele v. N.Y. State Teamsters Conf. Pens. & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987)). In addition, the size and caliber of a firm may also be considered when determining a reasonable hourly rate, "primarily due to varying overhead costs." Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006) (citations omitted); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989) (stating that "smaller firms may be subject to their own prevailing market rate"); Lukaszuk v. Sudeen, No. CV 02-5143, 2007 U.S. Dist. LEXIS 95919, at *35 (E.D.N.Y. Nov. 27, 2007) ("[C]ourts typically recognize that the size and caliber of a firm will influence the determination of appropriate billing rates.") (citing cases).

For purposes of determining the reasonable hourly rate, "[t]he relevant community to which the court should look is the district in which the case was brought." Marisol A. v.

---

[5] The Second Circuit recently defined the reasonable hourly rate as "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens, 484 F.3d at 169.

Guiliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing In re Agent Orange Prod. Liab.

Litig., 818 F.2d 226, 232 (2d Cir. 1987); see also Arbor Hill Concerned Citizens, 484 F.3d at 169

(stating that the "community" for purposes of calculating attorney's fees "is the district where

the district court sits") (citation omitted).  Courts in this circuit routinely consider the rates of

both the Eastern District of New York as well as the Southern District when undertaking this

analysis.  See, e.g., New Leadership Committee v. Davidson, 23 F. Supp. 2d 301, 305 (E.D.N.Y.

1998) (holding that the magistrate judge did not abuse her discretion in considering the

prevailing hourly rates in the Southern District of New York when awarding attorney's fees).

     The determination of what constitutes a reasonable hourly rate also "requires the

submission of information 'concerning the credentials or experience of counsel applying for

fees.'"  Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (quoting Night Hawk Ltd. v. Briarpatch

Ltd., L.P., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *4 (S.D.N.Y. Dec. 23, 2003)).

Where such information is lacking, the court may reduce the award of attorney's fees

accordingly.  See Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (citation omitted); see also

Marano v. Aaboe, No. 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29,

2007) (reducing plaintiff's counsel's requested hourly rate where counsel failed to "provide any

details as to her skill, experience or reputation" in order to support the rate requested).

     "Overall, hourly rates for attorneys approved in recent Eastern District of New York

cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to

$150 for junior associates, and $70 to $80 for legal assistants."  Cho, 524 F. Supp. 2d at 207

(collecting cases); Commission Express Nat'l, Inc. v. Rikhy, No. CV-03-4050, 2006 U.S. Dist.

LEXIS 8716, at 19-20 (E.D.N.Y. Feb. 16, 2006) ("Hourly rates approved in recent Eastern

District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates . . . $200 to $250 for senior associates . . .[and] [r]ates for paralegals range from $60 to $75.") (citing cases). Similarly, in the Southern District of New York, the following rate scale has been found to be reasonable: $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-$250 for attorneys with seven to nine years of experience, $180-$200 for attorneys with four to six years of experience, and $130-$150 for attorneys with one to three years of experience. See Marisol A., 111 F. Supp. 2d at 386-387 (citing cases where the fee awards ranged from $125-$200 for junior and senior associates and from $250-$350 for partners).

Here, plaintiffs seek fees for the following attorneys who expended time on behalf of plaintiffs: (1) Adam Mitzner, a partner with nineteen years of experience, whose billing rate is $475 per hour; (2) Howard Davis, a solo practitioner with forty-one years of experience, whose billing rate is $650 per hour; (3) Aliza Herzberg, a partner with seventeen years of experience, whose billing rate is $390 per hour; (4) Jason Canales, an associate with five years of experience, whose billing rate at the time he performed the work herein was $325 per hour; (5) Dina Weinberg, an associate with three years experience, whose billing rate at the time she performed the work herein was $200 per hour; and (6) Katerina Valhos, an associate with six years of experience, whose billing rate at the time she performed the work herein was $250 per hour. Although counsel for plaintiffs has provided the Court with the necessary background information for Messrs. Mitzner and Davis, no such information was provided for Herzberg, Canales, Weinberg and Valhos, other than their status as either a partner or an associate and the number of years each has been practicing law. Counsel has similarly failed to provide the Court

with "any guidance as to what rates attorneys of similar caliber charge in the current marketplace."[6] <u>Molefi</u>, 2007 U.S. Dist. LEXIS 10554, at *18. Accordingly, there is "no way the court can engage in any sort of comparative analysis as mandated under the 'lodestar' method . . . [and] a deduction is warranted." <u>Id.</u> (citing cases in which reductions were made in the amount of attorney's fees requested due to counsel's failure to provide information concerning the credentials of attorneys for whom fees were requested).

Based on the foregoing, I recommend that the following hourly billing rates be used in calculating the lodestar: (1) $350 per hour for Mitzner; (2) $375 per hour for Davis; (3) $350 per hour for Herzberg; (4) $200 per hour for Canales; (5) $150 per hour for Weinberg; and (6) $200 per hour for Valhos.

B.     <u>Number of Hours Reasonably Expended</u>

In determining the hours reasonably expended, federal courts consider the following:

> (1) hours which reflect the inefficiency or duplication of services should be discounted; (2) hours that are excessive, unnecessary or which reflect "padding" should be disallowed; (3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation of facts and other types of work that can be accomplished by nonlawyers who command lesser rates; (4) time spent in court should be differentiated from time expended for out-of-court services; and (5) the hours claimed should be weighed against the court's own knowledge, experience and expertise as to the time required to complete similar activities.

---

[6] Mitzner attempts to satisfy this requirement by the inclusion of one paragraph in his declaration, dated July 23, 2008, which states: "Based on my understanding of the legal marketplace, my rate is below the rate charged by many of my contemporaries. In fact, I am aware that many lawyers of my seniority charge in excess of $650 per hour." (Mitzner Decl. ¶ 11.) I find this to be insufficient.

McGrath v. Toys "R" Us, Inc., No. 01-3071, 2002 U.S. Dist. LEXIS 22610, at *8-9 (E.D.N.Y. Oct. 16, 2002). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Bethlehem Steel Corp., 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). The court should, however, deduct any hours for work that was "excessive, redundant or otherwise unnecessary." Hensley, 461 U.S. at 434. Any deductions for this reason may be accounted for in an across-the-board percentage. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (citing In re Agent Orange, 818 F.2d at 237-38).

Where billing records are vague, a reduction in fees is also appropriate. See Ace Ltd. v. Cigna Corp., No. 00-9423, 2001 WL 1286247, at *4 (S.D.N.Y. Oct. 22, 2001); Marisol A., 111 F. Supp. 2d at 397; Williams v. N.Y.C. Housing Auth., 975 F. Supp. 317, 327 (S.D.N.Y. 1997). "Although counsel is not 'required to record in great detail how each minute of his time was expended . . . counsel should [at a minimum] identify the general subject matter of his time expenditures." Marisol A., 111 F. Supp. 2d at 396-97 (quoting Hensley, 461 U.S. at 437 n.12). Examples of entries that have been found to be inadequate with regard to specificity include those that state "search for reply brief," "conference with," or "review of," without further explanation. Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510, 520 (S.D.N.Y. 1994); see also Orshan v. Macchiarola, 629 F. Supp. 1014, 1019 (E.D.N.Y. 1989) (finding that entries such as "prepare correspondence" and "review correspondence" are inadequate).

A reduction is also warranted where counsel engages in "block billing," such that multiple tasks are aggregated into one billing entry thereby "'imped[ing] the court's efforts to evaluate the reasonableness of any of the listed activities.'" Commission Express Nat'l, 2006

U.S. Dist. LEXIS 8716, at *17 (quoting Soler v. G&U Inc., 801 F. Supp. 1056, 1061-62

(S.D.N.Y. 1992). Although not prohibited, block billing "renders it difficult to determine

whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary

. . . ." Molefi, 2007 U.S. Dist. LEXIS 10554, at *21 (quotation omitted). Across-the-board

percentage cuts are routinely employed by courts to remedy such block billing. See, e.g., id. at

*24 (reducing fees by fifteen percent, in part for block billing); Commission Express Nat'l, 2006

U.S. Dist. LEXIS 8716, at *17 (reducing fees by ten percent for block billing); Gonzalez v.

Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reducing fees by twelve percent for block

billing).

In the within action, plaintiffs seek reimbursement for 3,009.75 hours expended on their

behalf by counsel. However, a review of the billing records submitted by plaintiffs' counsel

reveals substantial block billing as well as numerous vague entries that fail to specify the nature

of the work performed. With respect to block billing, although it appears to have been a regular

practice among all of the attorneys who expended time in connection with this action, the most

egregious offenders were Mitzner and Davis, the two attorneys who performed the vast majority

of work for which fees are now sought. In fact, more than 1,200 of the approximately 3,000

hours expended in this action are accounted for through block billing. As stated above, such

billing practices make it virtually impossible for the Court to identify whether the amount of

time spent on a particular task is reasonable and a reduction in the fees requested is warranted, as

discussed infra at page 15. See Simmons v. N.Y. City Transit Auth., No. CV-02-1575, 2008

U.S. Dist. LEXIS 16949, at *16 (E.D.N.Y. Mar. 4, 2008) (stating that "[c]ommingling tasks

within one time entry may impede the court's efforts to evaluate the reasonableness of any of the listed activities" and noting that the "remedy" is to "apply percentage cuts").

Moreover, the lack of specificity with respect to numerous time entries also warrants a reduction in the fees requested, discussed infra at page 15. Such entries include items that merely state "emails," "brief," "service issues," "brief issue," "subpoena issue," "reading," "review of materials," "tables," "discovery concerns," "attention to filing issues," "completion," "legal research,"[7] and other similar phrases. In addition, many entries are noted simply as "conference with" or "email with" a particular individual with no description whatsoever as to what the conference or the email concerned. Such entries account for approximately 650 hours of the 3,000 hours expended in this action.[8] Entries of this nature fail to meet the requisite specificity mandated by the courts of this Circuit. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (holding that attorney's fees should be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.").

In addition, several time entries in Mitzner's billing records indicate time spent traveling in connection with the within action, which were recorded at Mitzner's regular hourly rate. However, "[i]t is well-established that within this circuit, time charged by an attorney for travel

---

[7] I note that Mr. Mitzner did attempt to clarify some of the billing entries entitled "legal research" through a supplemental submission to Judge Irizarry, dated October 22, 2008. However, a review of the billing records demonstrates several other entries where this phrase was used with no description of what research was conducted and for which Mr. Mitzner has not provided any additional explanation.

[8] It is impossible for the undersigned to accurately determine the number of hours that are insufficiently described by the foregoing phrases due to the rampant block billing, described supra.

will be reimbursed at half of the attorney's [reasonable] hourly rate." <u>Access 4 All, Inc. v. 135</u> <u>W. Sunrise Realty Corp.</u>, No. CV 06-5487, 2008 U.S. Dist. LEXIS 91674, at *36-37 (E.D.N.Y. Sept. 30, 2008) (citing cases); <u>see also</u> <u>Simmons</u>, 2008 U.S. Dist. LEXIS 16949, at *15 ("Travel time is reimbursed at one-half of the determined hourly rate."); <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005) (stating that "[c]ourts in this Circuit regularly reduce attorney's fees by 50% for travel time"). Unfortunately, due to the extensive block billing employed by Mitzner, the undersigned is unable to ascertain exactly how many hours were spent on travel time. Accordingly, I recommend that any billing entries that contain a reference to travel should be reduced by fifty percent (50%), regardless of whether other tasks were also performed by Mitzner in the billing entry.[9]

Finally, various billing entries in Davis' time records pertain to time spent performing certain clerical tasks that are typically done by a paralegal, for which plaintiffs' seek to recover at Davis' hourly billing rate. Such tasks include reviewing and copying files and time spent at a warehouse shifting files, amounting to 21.1 hours. However, "[u]nder fee-shifting statutes, attorneys may not be compensated at their regular hourly rate for time spent performing clerical tasks," but rather "should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all." <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008) (citing cases); <u>see also</u> <u>Lukaszuk v. Sudeen</u>, No. CV 02-5143 , 2007 U.S. Dist. LEXIS 95919, at *37 (E.D.N.Y. Nov. 27, 2007) ("[T]he hours spent performing tasks ordinarily performed by a paralegal are not recoverable at counsel rates."); <u>E-Lead Elec. Co. v. Tecnozone Enters., LLC</u>, No. 03 Civ. 4901, 2004 U.S. Dist. LEXIS

---

[9] This would include 37.2 hours of Mitzner's recorded time.

-14-

19742, at *7 (S.D.N.Y. Sept. 28, 2004) (finding that an "attorney rate is not justified" for "ministerial" or "administrative" tasks).   Accordingly, I recommend that such hours be reimbursed at a rate of $100 per hour.


IV.     Calculation of Attorney's Fees

When calculating an across-the-board percentage reduction in fees, courts consider all of the various relevant factors outlined above.  See, e.g., Marisol, 111 F. Supp. 2d at 401 (reducing hours by 15% for time spent on non-compensable matters, overstaffing and excessive time spent on discrete tasks); see also Ragin, 870 F. Supp. at 521 (employing a 30% across-the-board percentage reduction for numerous vague billing entries, lack of contemporaneous time records and duplicative billing).  Based on the egregious block billing and the numerous vague billing entries, discussed supra, I recommend an across-the-board reduction of twenty percent (20%) for all of the hours requested.

In light of the twenty percent (20%) reduction in hours, I recommend that attorney's fees be awarded as follows:

| Name | Position | Requested Number of Hours Reduced by 20% | Court's Recommended Hourly Rate | Number of Hours Reasonably Expended Multiplied by Reasonable Hourly Rate |
|---|---|---|---|---|
| Adam Mitzner | Partner | 1,820.48[10] x 80% = 1,456.38 | $350/hour | $ 509,733.00 |
| Howard Davis | Partner | 937.15[11] x 80% = 749.72 | $375/hour | $ 281,145.00 |
| Aliza Herzberg | Partner | 12.5 x 80% = 10.00 | $350/hour | $ 3,500.00 |
| Jason Canales | Associate | 45 x 80% = 36.00 | $200/hour | $ 7,200.00 |
| Dina Weinberg | Associate | 124 x 80% = 99.20 | $150/hour | $ 14,880.00 |
| Katerina Valhos | Associate | 31 x 80% = 24.80 | $200/hour | $ 4,960.00 |
| | Paralegal Tasks | 21.1 x 80% = 16.88 | $100/hour | $ 1,688.00 |

Based on the foregoing, I recommend that plaintiffs be awarded $823,106.00 in attorney's fees.

I note that plaintiffs' counsel also estimates that an additional 2,000 hours of attorney time will be spent over the next two years in connection with the "claims process" of this action, for which plaintiffs seek to be compensated now. (Pl. Mem. of Law 21-22.) Thus, plaintiffs are seeking to have the Court determine that services not yet provided are reasonable. This I am

---

[10] This represents Mitzner's recorded time of 1839.08 hours minus half of the travel-related entries (37.2 divided by 2 = 18.6).

[11] This represents Davis' recorded time of 958.25 hours minus the 21.1 hours spent on paralegal tasks.

unable to do since the nature and extent of such services are unknown at this time. Accordingly, I recommend that any request for prospective legal fees or expenses be denied at this time, without prejudice to renewal after such costs are actually incurred. See Local Union No. 2 v. Industrial Surfaces, Inc., No. 94-CV-0216, 1994 U.S. Dist. LEXIS 21531, at *8 (N.D.N.Y. Aug. 9, 1994) (finding plaintiffs' request for prospective legal fees not "appropriate for judgment at this time" and stating that "such fees should also be supported by an accounting of the hours billed and the rate of billing").


V.      Use of a Multiplier

Plaintiffs assert that if the lodestar method is used to calculate their attorney's fees, they are entitled to have a multiplier applied to it. Plaintiffs request a multiplier of somewhere between 3 and 4.5 to compensate for the "risks and uncertainties of class representation." (Pl. Mem. of Law 24.)

"While multipliers are occasionally used in common fund class action cases," as plaintiffs contend, "it is well settled in the Second Circuit that enhancements of the lodestar amount of attorneys' fees are not permissible under fee-shifting statutes." Fink v. City of New York, 154 F. Supp. 2d 403, 414 (E.D.N.Y. 2001) (collecting cases) (quotation omitted). Moreover, the Supreme Court has "explicitly disallowed risk of loss . . . as the basis for upward enhancements of attorney fee awards." Id. (citing City of Burlington v. Dague, 505 U.S. 557, 566 (1992)). The Supreme Court has similarly held that factors such as 'the novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the

lodestar amount, and cannot serve as independent bases for increasing the basic fee award."
Delaware Valley Citizens' Council, 478 U.S. at 565 (quoting Blum v. Stevenson, 465 U.S. 886,
898-900 (1984)) (alteration in original). "Although upward adjustments of the lodestar figure
are still permissible . . . such modifications are proper only in certain 'rare' and 'exceptional'
cases, supported by both 'specific evidence' on the record and detailed findings by the lower
courts." Delaware Valley Citizens' Council, 478 U.S. at 565 (citing Blum, 465 U.S. at 898-901).
I find that this is not such a case. See Fink, 154 F. Supp. 2d at 415 (declining to award a
multiplier in an ADA action).

Plaintiffs commenced this case in 2005. The only motion practice on plaintiffs' part
consisted of opposition to defendants' motion to dismiss, which was granted in part and denied
in part, and opposition to a motion for reconsideration filed by defendants with respect to that
decision. No motion for summary judgment was ever made in this action since the parties settled
before the action got to the point. Moreover, decisions had been rendered on motions to dismiss
in two substantially similar actions, Andree v. Nassau County, 311 F. Supp. 2d 325 (E.D.N.Y.
2004), and Mejia v. City of New York, No. 01 Civ. 3381, 2004 U.S. Dist. LEXIS 25058
(S.D.N.Y. Dec. 10, 2004), prior to the filing of the within action, that greatly increased plaintiffs'
likelihood of success in this action.

Specifically, in Andree, the plaintiffs were parents of disabled children who alleged that
Nassau County had a policy of unlawfully imposing Medicaid lines on personal injury awards
for the purpose of reimbursing moneys paid to plaintiffs for special education and related
services, in violation of, inter alia, the IDEA. See Andree, 311 F. Supp. 2d at 328-29. In
denying that part of defendants' motion which sought to dismiss the plaintiffs' IDEA claims, the

court specifically found that the "placement of a lien on settlement or personal injury awards received by a disabled student to pay for services that are mandated to be provided free of charge to such students is a violation of the IDEA." Id. at 333 (citing Wise v. Ohio Dep't of Educ., 863 F. Supp. 570, 574 (N.D. Ohio 1994)).  This is precisely the issue that was litigated - and ultimately settled in favor of plaintiffs - in the within action.  In fact, plaintiffs herein even cited the foregoing quote from Andree in their Complaint in this action.  (Compl. ¶ 61.)

In addition, the court in Andree also sustained the plaintiffs' cause of action for a violation of their Fourteenth Amendment rights, pursuant to Section 1983, stating that "targeting qualified children with disabilities who are also 'successful tort litigants,' may be irrational given the clear language of the IDEA . . . ." Andree, 311 F. Supp. 2d at 335.  Plaintiffs herein alleged a similar cause of action in their Complaint, namely that plaintiffs' Fourteenth Amendment equal protection rights were violated because they were impermissibly discriminated against due to the fact that they were "recipients of awards or settlements based on personal injury actions."  (Compl. ¶¶ 104-06.)  Accordingly, plaintiffs - or more precisely, their counsel - had every reason to believe that this action would be successful based on the foregoing precedent set in Andree.

Similarly, Mejia also involved plaintiffs who were the parents of disabled children who received Medicaid assistance from New York City and successfully resolved medical malpractice lawsuits.  Mejia, 2004 U.S. Dist. LEXIS 25058, at * 4-5.  The City thereafter placed liens against the settlement amounts received by each plaintiff.  See id. at *5.  Plaintiffs commenced litigation against the City, alleging that the City wrongly included the cost of educational services in their liens, in violation of the IDEA and the Fourteenth Amendment.  See

id. at *6.  Like the court in Andree, the Mejia court denied defendants' motion to dismiss plaintiffs' Fourteenth Amendment claims.

Moreover, the court specifically stated in a footnote that it did not need to decide defendants' motion with respect to plaintiffs' IDEA claim because the New York State Department of Health had recently instructed the City that "no lien be imposed and no recovery be made for Medicaid furnished for school-based medical care and services provided to a disabled child, which the child was entitled to receive under the IDEA as part of a free and appropriate public education."  Id. at *12 n.6.  The City informed the court in Mejia that it would "no longer [be] seeking to enforce their Medicaid lien against plaintiffs' third party settlements/judgments for the cost of medical care or services provided to the infant plaintiffs, which they were entitled to receive under the IDEA . . . ."  Id.

Based on the foregoing, it is clear that the central issue in the within litigation - plaintiffs' IDEA claim - was already resolved by both the Andree and the Mejia cases prior to the plaintiffs herein ever filing suit.  Although plaintiffs' counsel did effectuate a substantial settlement for plaintiffs, this was not the complex and complicated case plaintiffs are making it out to be.  In fact, as a result of the precedents set in the Andree and Mejia cases, plaintiffs herein had what amounts to a "slam dunk" of a case, which plaintiffs' counsel were obviously aware of since they cited to the Andree case in their Complaint.  Accordingly, applying a multiplier would not be appropriate under the circumstances.

Based on the foregoing, I recommend that plaintiffs' request that a multiplier be used to enhance the amount of the fees awarded pursuant to the lodestar method be denied.

VI.    Expenses

   "'Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting United States Football League, 887 F.2d at 416); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.") (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (additional citation omitted).  "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990).  The expenses claimed in this action are $5,063.99.[12]  (Mitzner Decl. Ex. T.)

   The expenditures incurred in the within action include costs for legal research, postage, overnight mail delivery, court reporters, and messenger services, all of which are routinely recoverable.  See, e.g., Simmons, 2008 U.S. Dist. LEXIS 16949, at *22-23 (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be reasonable expenditures for which plaintiff was entitled to reimbursement); Cho, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing transcripts" as well as legal research); Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689,

_____

   [12]  Plaintiffs also request an additional $5,000 in expenses purportedly incurred by Davis. However, no documentation to support the award of such expenses was ever submitted to the Court.  Accordingly, I recommend that the request for these expenses be denied.

at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested); Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the type of costs that may be included in an award of attorney's fees"); Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for costs relating to "photocopying, filing fees, Federal Express, [and] trial exhibits").

Based on the foregoing, I recommend that plaintiffs be awarded their incurred expenses in the amount of $5,063.99.

RECOMMENDATION

For the foregoing reasons, I recommend that the lodestar method be used to calculate the award of reasonable attorney's fees, pursuant to the IDEA and the Civil Rights Act. I further recommend that plaintiffs be awarded $823,106.00 in attorney's fees and $5,063.99 in expenses, for a total monetary award of $828,169.99.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994); Frank v.

Johnson, 968 F.2d 298 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of

Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).


**SO ORDERED:**

Dated: Central Islip, New York
          February 13, 2009

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge