UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

CELESTE GREEN, as Parent and Natural Guardian of
ALIA GREEN, MARSCHELL RUGGS, as Parent and
Natural Guardian of ASHLEY VICTORIA RUGGS,
and JONATHAN and RANDI BOLOS, as Parents and
Natural Guardians of LAUREN BOLOS,

                         Plaintiffs,

           -against-

THE CITY OF NEW YORK, THE CITY OF
NEW YORK DEPARTMENT OF SOCIAL SERVICES
HUMAN RESOURCES ADMINISTRATION and
ROBERT DOAR,[1]

                         Defendants

------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

05-CV-429 (SLT) (ETB)

**TOWNES, United States District Judge:**

Following the settlement of this action, plaintiffs' class counsel moved pursuant to Rules

23(g) and 54(d)(2) of the Federal Rules of Civil Procedure for reasonable attorneys' fees and

other costs, requesting that this Court use the percentage-of-the-fund method (or "Fund Method")

to award $6.75 million in legal fees, plus approximately $10,000 in expenses.  By order dated

November 6, 2008, Judge Dora L. Irizarry, who presided over this case before she recused herself

in June 2009, referred class counsel's motion to Magistrate Judge E. Thomas Boyle for a report

and recommendation.  On February 13, 2009, Magistrate Judge Boyle issued his Report and

Recommendation (the "R&R"), recommending that the lodestar method be used to calculate

attorneys' fees and that plaintiffs be awarded $823,106.00 in attorneys' fees and $5,063.99 in

expenses.  R&R at 22.

---

[1]By operation of Rule 25(d) of the Federal Rules of Civil Procedure, Robert Doar was
automatically substituted for Verna Eggleston as a defendant in this action when he replaced her
as the Administrator/Commissioner of the New York City Human Resources Administration/
Department of Social Services in February 2007.

Class counsel now objects to the R&R, arguing (1) that it incorrectly rejected the Fund Method, (2) that the hourly rates recommended in the R&R were inconsistent with recent Second Circuit case law, (3) that the R&R incorrectly recommended reducing class counsel's billable hours by 20 percent, (4) that the lodestar amount should have been enhanced by a "multiplier," and (5) that the magistrate judge overlooked certain receipts in recommending that this Court award only half of the expenses requested. For the reasons set forth below, this Court rejects the first and fourth objections and adopts those portions of Magistrate Judge Boyle's R&R which recommend (1) using the lodestar method to calculate attorneys' fees and (2) denying class counsel's request that the lodestar amount be enhanced. However, in light of recent developments in the law, and in light of the fact that some of class counsel's objections are in the nature of motions for reconsideration, this Court recommits this matter to Magistrate Judge Boyle and reserves decision on the remaining objections.

## BACKGROUND

In January 2005, the parents of three severely handicapped children commenced this class action pursuant to 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, alleging that the defendants – the City of New York, the City's Human Resource Administration/Department of Social Services ("HRA/DSS") and the Administrator/Commissioner of HRA/DSS – wrongfully imposed Medicaid liens on amounts recovered by the plaintiffs in medical malpractice lawsuits. In a nutshell, the complaint alleged that, through use of the liens, defendants obtained reimbursement for certain services that defendants were required to provide free of charge under the IDEA. The plaintiffs sought to enjoin this practice, and to recover both damages and the "costs of suit, including reasonable attorneys' fees, pursuant to IDEA ...." Complaint at 20.

In April 2008, after Judge Irizarry largely denied defendants' motion to dismiss this action and denied a motion to reconsider that ruling, the parties reached a settlement in this case. That settlement, which was memorialized in a "Stipulation and [Proposed] Order of Settlement" dated May 1, 2008 (the "Settlement"), provided, *inter alia*, for the refund of amounts that defendants recovered from the plaintiff class as a result of the wrongfully imposed liens. With respect to attorneys' fees, the Settlement specifically provided that, no less than 90 days prior to the Fairness Hearing, plaintiffs' counsel could file and serve on defendants' counsel the "Plaintiffs' Counsel Fee and Expense Application," which was specifically defined as an application "for payment by Defendants of attorneys' fees and expenses for this action." Settlement at ¶¶ 1.22 & 9.1. The Settlement did not suggest that plaintiff's counsel might also seek to recover attorneys' fees from the plaintiff class itself pursuant to the "common fund doctrine."

On August 25, 2008, class counsel moved for an award of attorneys' fees and expenses pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure. Citing to *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and other "common fund" cases, class counsel urged the Court to use the "percentage-of-the-fund method" in calculating attorneys' fees. *See* Plaintiffs' Class Counsel's Application for Attorneys' Fees and Expenses ("Class Counsel's Application") at 11-12. Although the Settlement did not provide for creation of a fund and the amount to be refunded to the plaintiff class could not yet be calculated with precision, class counsel "estimate[d] that the class will receive approximately $45.5 million pursuant to the Settlement," *id.* at 14, and requested that the Court award them "a fee of $6.75 million, ... less than 15% of the total recovery available to the class." *Id.* at 13.

Class Counsel's Application also discussed facts necessary to calculate the "lodestar," but urged the Court to use the lodestar method solely to "cross-check" the reasonableness of the fees they requested under the percentage-of-the-fund method. Class Counsel's Application proposed, *inter alia*, that lead counsel – Adam D. Mitzner of Pavia & Harcourt LLP – be awarded fees at an hourly rate of $475 per hour, and that co-counsel, solo practitioner Howard S. Davis, be awarded fees at $650 per hour. *Id.* at 22-23. Plaintiffs argued that these rates were "well within the range of awards made in this Circuit," and cited to several unreported cases from the Southern District of New York for the proposition that rates in excess of $700 per hour had been awarded. *Id.* at 23. Class counsel also provided declarations from Messrs. Mitzner and Davis, which attached contemporaneous time records for these attorneys and for Mr. Mitzner's partner and associates.

Recognizing that the proposed lodestar amount, calculated by multiplying the requested hourly rates by the hours documented in the contemporaneous time records, would amount to only a fraction of the $6.75 million requested, class counsel argued that it would be appropriate to apply a "multiplier" or "enhancer" to the lodestar amount. Class counsel asserted that it is "common practice in class actions for courts to apply a 'multiplier' ... to compensate the attorneys for the risks and uncertainties of class representation." Class Counsel's Application at 24. Class counsel did not discuss the factors used to determine what multiplier might be appropriate, but rather determined what the multiplier would have to be to justify the $6.75 million fee request. Class counsel calculated that "[i]f this Court only considered the time billed through the Fairness Hearing," which then had yet to take place, the $6.75 million fee would be "fair and reasonable if a multiplier slightly below 4.5 were applied." *Id.* Finally, Class Counsel's Application sought out-of-pocket disbursements totaling approximately $10,000,

stating that this amount was "far below the amount actually incurred" and that plaintiffs would "submit additional invoices and receipts shortly." *Id.* at 25 & n. 6.

In their Memorandum of Law in Opposition to Plaintiffs' Application for Attorneys' Fees and Expenses ("Defendants' Opposition"), defendants argued, *inter alia,* that the "common fund doctrine" was inapplicable to this case. Defendants noted that the "common fund doctrine" was an equitable doctrine, designed to prevent class plaintiffs from freeloading on the efforts of the lead plaintiffs and their attorneys, and that this equitable rationale did not apply in cases in which class counsel sought to recover fees from defendants. Defendants also argued that percentage-based fee awards were inappropriate in civil rights or IDEA cases, and would be unworkable in cases in which the amount of the fund could only be estimated.

In a Reply Memorandum of Law in Support of its Application for Attorneys' Fee and Expenses ("Plaintiffs' Reply"), class counsel stated that they were *not* seeking to collect attorneys' fees from defendants, but rather from members of the plaintiff class. Without citing to any particular portion of the Settlement, class counsel stated:

> [T]he City has agreed to pay complete refunds to all class members, and Plaintiffs' Class Counsel is being paid out of these refunds. Accordingly, the City does not pay a penny toward counsel's fees – the fee will be completely paid by class members, either as a portion of the refund provided to class members or from unclaimed class member refunds.

Reply at 3.

Although Judge Irizarry heard oral argument on Class Counsel's Application during the Fairness Hearing on October 17, 2008, she subsequently referred the Application to Magistrate Judge E. Thomas Boyle for a report and recommendation. Magistrate Judge Boyle conducted a telephone conference relating to the Application on November 20, 2008, at which he noted that

class counsel had not made an application under the fee-shifting provisions of 42 U.S.C. § 1988 or the IDEA. Although plaintiffs' lead counsel initially expressed reluctance to seek fees under these fee shifting provisions – suggesting that they were inapplicable to class actions and apparently preferring that the fees be awarded from plaintiffs' refunds pursuant to the "common fund doctrine" – he eventually requested that the Court consider, in the alternative, awarding fees under the applicable fee-shifting statutes. *See* Transcript of Nov. 20, 2008, Conference at 12. Magistrate Judge Boyle granted class counsel leave to make further submissions relating to a request for attorneys' fees under the fee-shifting provisions of 42 U.S.C. § 1988. In mid-December 2008, Mr. Mitzner filed both a supplemental declaration and an amended supplemental memorandum in further support of Class Counsel's Application.

## *The Report and Recommendation*

On February 13, 2009, Magistrate Judge Boyle filed his R&R. In the R&R, Magistrate Judge Boyle first found that the "common fund method of calculation" was inappropriate in this case. R&R at 3. He noted that plaintiffs had not cited to any cases applying the "common fund" doctrine in an IDEA case and that dictum in *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986), implied that the doctrine might only be applicable "in commercial litigation to plaintiffs who recovered a 'common fund' for themselves and others through securities or antitrust litigation." R&R at 3-4 (quoting *Delaware Valley Citizens' Council*, 478 U.S. at 562 n. 6). However, Magistrate Judge Boyle did not principally rely on this dictum, stating that it was "[e]ven more notabl[e]" that no "common fund" was created in this case, and that this fact made the action "unsuitable for the application of a common fund method of calculation." R&R at 4.

After citing to Second Circuit case law mandating the use of the lodestar approach in determining fee awards in IDEA cases, *id.* at 5 (citing, *e.g., I.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir. 2003)), Magistrate Judge Boyle proceeded to calculate the "presumptively reasonable fee" or "lodestar" figure. *Id.* at 6. In determining the reasonable hourly rate for class counsel's services, the magistrate judge acknowledged that district courts are required to "look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 7 (internal quotations, citation, and footnote omitted). Although Magistrate Judge Boyle cited to Second Circuit cases holding that the "community" for purposes of calculating attorneys' fees is the district in which the district courts sit, he also relied on a district court opinion implying that courts in this district could consider rates in the Southern District of New York when awarding attorneys' fees. *Id.* at 7-8 (citing *New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998)).

Magistrate Judge Boyle then surveyed the hourly rates in the Eastern and Southern Districts of New York, and suggested that they were similar. Although he cited cases from both districts listing $350 per hour as the highest permissible hourly rate for even the most experienced attorneys, Magistrate Judge Boyle nonetheless recommended permitting Mr. Davis to recover $375 an hour and permitting Mr. Mitzner to recover $350 per hour. In addition, despite noting that Mr. Mitzner had not provided biographical information for his partner or any of the three associates for which he sought fees, Magistrate Judge Boyle recommended awarding Mr. Mitzner's partner, Aliza Herzberg, $350 per hour. He also recommended awarding associates Jason Canales, Katerina Valhos, and Dina Weinberg $200, $200, and $150 per hour, respectively. *Id.* at 10.

Magistrate Judge Boyle then scrutinized contemporaneous time records supplied by class counsel which sought reimbursement for 3,009.75 hours. *Id.* at 12. The magistrate judge noted that class counsel accounted for 1,200 of the hours through "block billing," in which multiple tasks were aggregated into a single entry. *Id.* at 11-12. The entries relating to another 650 hours were insufficiently specific. *Id.* at 13. Although there remained approximately 1,150 hours which did not fall in either of these two categories, Magistrate Judge Boyle recommended an across-the-board reduction of 20 percent for all of the hours requested. *Id.* at 15.

In addition, Magistrate Boyle identified specific defects in entries relating to 37.2 hours of Mr. Mitzner's time and 21.1 hours of Mr. Davis' time. First, the magistrate judge noted that class counsel sought full reimbursement for the time Mr. Mitzner spent traveling, and did not apply the customary 50 percent discount to these hours. *Id.* at 13-14. Second, Magistrate Judge Boyle noted that class counsel sought full reimbursement for 21.1 hours that Mr. Davis spent on tasks typically performed by paralegals, such as copying and shifting files. *Id.* at 14. Magistrate Judge Boyle recommended reimbursing plaintiffs for only half the hours Mr. Mitzner spent traveling, and awarding plaintiffs only $100 for each hour Mr. Davis spent performing paralegal duties. *Id.* at 14-15. The magistrate judge declined to award fees for services to be performed in the future, and recommended that class counsel's requests for "prospective legal fees and expenses be denied ... without prejudice to renewal after such costs are actually incurred." *Id.* at 17.

After calculating the "lodestar" amount at $823,106.00, Magistrate Judge Boyle considered plaintiffs' request that the Court apply a "multiplier" to the lodestar amount. Although the magistrate judge cited *Fink v. City of New York*, 154 F. Supp. 2d 403 (E.D.N.Y. 2001), for the proposition that "it is well settled in the Second Circuit that enhancements of the

8

lodestar amount of attorneys' fees are not permissible under fee-shifting statutes," R&R at 17, he stated later in the R&R that "upward adjustments of the lodestar figure are still permissible ... in certain 'rare' and 'exceptional' cases." R&R at 18. The magistrate judge then opined that this was not a case in which an upward adjustment was appropriate, characterizing the case as a "slam dunk" because the central issue in the case had already been resolved in two substantially similar actions: *Andree v. Nassau County*, 311 F. Supp. 2d 325 (E.D.N.Y. 2004), and *Mejia v. City of New York*, No. 01 Civ. 3381, 2004 WL 2884407 (S.D.N.Y. Dec. 10, 2004). R&R at 20. Accordingly, Magistrate Judge Boyle recommended that plaintiffs be awarded attorney's fees of $823,106.00, plus out-of-pocket expenses in the amount of $5,063.99, for a total of $828,169.99. R&R at 22.

### Class Counsel's Objections to the R&R

Ten business days after Magistrate Judge Boyle filed his R&R, class counsel filed a document entitled, "Plaintiffs' Class Counsel's Objections to the Report and Recommendation" (the "Objections"), challenging almost every aspect of the R&R. After the Objections were amended in a single minor respect on March 2, 2009, defendants filed a Response to Plaintiffs' Objections (the "Response") on March 13, 2009. In the days immediately following the Second Circuit's August 3, 2009, decision in *Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009), both parties filed letters alerting this Court to this development in the law. For reasons of efficiency, this Court will discuss the specific arguments raised in the Objections and Response in the discussion, below.

## DISCUSSION

### I. The Standard of Review

Under 28 U.S.C. § 636(b)(1), if any party serves and files written objections to a magistrate judge's recommendations within ten days of being served with a copy of thereof, a

district court must "make a de novo determination of those portions of the report or ... recommendations to which objection is made." *Id.* Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## II. The Common Fund Doctrine

In this case, class counsel have filed specific objections relating to five different portions of Magistrate Judge Boyle's R&R. The first objection relates to Magistrate Judge Boyle's recommendation that this Court not apply the "common fund method of calculation," a recommendation which class counsel construe as resting on two mistaken premises: that the common fund doctrine does not apply to IDEA or civil rights cases and cannot be used in the absence of a segregated fund. Class counsel assert that the "Fund Method" has been applied in at least two class actions brought solely under the Civil Rights Act – *Warren v. Xerox*, No. 01-CV-2909 (JG), 2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008), and *Brunson v. City of New York*, Nos. 94 Civ. 4507 & 5632 (LAP), 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000) – and that the common fund doctrine has been applied in cases in which fee-shifting was potentially available. Plaintiffs' Class Counsel's Amended Objections to the R&R ("Amended Objections") at 4-5. Indeed, class counsel argues that the use of only fee-shifting statutes in civil rights class actions would wreak havoc on settlement practices, because counsel would refuse to settle if there was "even a remote possibility that the court might conclude plaintiffs were not the prevailing party." *Id.* at 7. In addition, class counsel argue that the absence of a segregated fund is "irrelevant" to the decision to use the "Fund Method." *Id.* (citing *Koppel v. Wein*, 743 F.2d 129, 135 (2d Cir. 1984), and *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469, 472 (2d Cir. 1968)).

In their Response, defendants contend that plaintiffs have not cited to a single case awarding fees based on a common fund theory in an IDEA or civil rights case, and distinguish *Warren* and *Brunson* as standing for "the uncontroversial position that parties may settle a litigation, including a class action civil rights litigation, under mutually [agreed-upon] terms." Response at 2. Defendants further argue that the "common fund doctrine" does not apply in cases in which plaintiffs seek to collect attorneys' fees from the defendants, *id.* at 4, and that class counsel would not be reluctant to settle civil rights actions because the law is clear that "where the settlement 'affords the plaintiff all or some of the relief he sought through a judgment,' including 'a monetary settlement ...,'" the plaintiff is a "prevailing party." *Id.* at 5 (quoting *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103-04 (2d Cir. 1991)).

To lay the groundwork for a discussion of the merits of class counsel's objection, this Court must start with basic principles. "From time immemorial it has been the rule in this country that litigants are expected to pay their own expenses, including their own attorneys' fees, to prosecute or defend a lawsuit." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, this so-called "American Rule" can work an injustice in class action lawsuits in which the labors of the lead plaintiffs and their attorneys create a common fund which benefits a plaintiff class. Under the American Rule, the lead plaintiffs and/or their attorneys would bear all the costs of the litigation, while late-arriving class plaintiffs would enjoy cost-free benefits.

The common fund doctrine, which has been recognized by the United States Supreme Court since at least the late 19th Century, prevents this inequity by creating an "exception to the general principle that requires every litigant to bear his own attorney's fees." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Under this doctrine, a court uses its jurisdiction over the fund

11

generated by the litigation to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit. *See id.* (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970)). The doctrine reflects "the traditional practice in courts of equity," *id.*, and its rationale remains an equitable one: "it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47.

In light of the rationale articulated in *Boeing* and *Mills*, this Court does not believe that the Supreme Court intended its footnote in *Delaware Valley Citizen's Council* to be read as limiting the scope of the common fund doctrine to particular types of commercial litigation. Indeed, as class counsel correctly notes, the common fund doctrine has been applied by circuit courts in other types of cases, including cases brought pursuant to statutes that contain fee-shifting provisions. However, all of the cases cited by class counsel are distinguishable, in that they involved cases in which the manner in which the case settled made fee-shifting unavailable.

In *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990), for example, "the district judge apparently would have awarded Suffolk extensive attorneys' fees had Suffolk not opted out of the class." *Id.* at 1327. However, because Suffolk did opt out, it would have been able to recoup its attorneys' fees under RICO's fee shifting provision only if Suffolk "prevailed on its appeal." *Id.* Faced with the possibility that Suffolk might not be able to recover any attorneys' fees if its appeal failed, the Second Circuit invoked equity to prevent an injustice. After noting that intervenors had been awarded fees despite their "minimal" contributions to the class, the Court stated:

> We believe it would be inequitable to deny Suffolk, whose contribution to the class unquestionably was greater than that of all the intervenors combined, all attorneys' fees based upon its own

eventual opposition to the settlement. As for the possibility that Suffolk could recover attorneys' fees based upon RICO's fee-shifting provision, ... this possibility is not a persuasive reason for denying fees herein.

*Id.*

Many of the other cases cited in the Amended Objections are cases involving the "common situation ... where a statutory fees case settles for an amount meant to extinguish all claims against the defendant, including claims for attorneys' fees." *McLendon v. Continental Group, Inc.*, 872 F.Supp. 142, 152 (D.N.J. 1994) (citing Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985)). In these cases, the settlement agreement itself creates a fund of a set amount and releases defendants from further liability. *See, e.g., Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 236 (2d Cir. 2007) (an ERISA case in which the settlement agreement created a fund of $42.5 million and released defendants from all claims "in any way connected to the actions that were the subject of the Complaint"); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994) (an ERISA case in which the plaintiffs agreed to release the defendants from liability for both damages and attorneys' fees in exchange for a lump sum settlement). In these cases, "when a settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees, equitable fund principles must govern the court's award of the attorneys' fees." *Skelton v. General Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988). Statutory fees are no longer available because of the way the settlement is structured, and plaintiffs would be unjustly enriched at the expense of their counsel if plaintiffs were permitted to retain the entire fund.

In this case, unlike the cases cited above, there is nothing to preclude operation of the fee-shifting statutes and no apparent reason to grant equitable relief. The federal statutes under which this action was brought – the IDEA and 42 U.S.C. § 1983 – both contain fee-shifting provisions, permitting a court to award reasonable attorneys' fees to a "prevailing party." *See* 20 U.S.C. § 1415(i)(3)(B), 42 U.S.C. § 1988(b). Plaintiffs' pleading expressly sought an award of the "costs of suit, including reasonable attorneys' fees, pursuant to IDEA," Complaint at 20, and defendants do not contest that plaintiffs are the "prevailing party" by virtue of the Settlement and are entitled to recoup these costs. *See* Response at 5. The Settlement did not release defendants from liability for these statutory attorneys' fees or imply that the refunds plaintiffs were to receive were intended to cover the costs of the litigation. To the contrary, the Settlement specifically provided that plaintiffs' counsel could file and serve on defendants' counsel an application "for payment *by Defendants* of attorneys' fees and expenses for this action." Settlement at ¶¶ 1.22 & 9.1 (emphasis added). Since the Settlement envisions that defendants, not the lead plaintiffs, will fully compensate class counsel, the class plaintiffs will not be unjustly enriched if class counsel is not awarded a portion of their refunds.

Assuming, *arguendo*, that class counsel could show that fee-shifting was unavailable and that there existed a reason to grant equitable relief, class counsel still would not be entitled to have the court employ the " percentage-of-the-fund method" of calculating fees. Even in cases in which the common fund doctrine applies, courts have discretion to use either the loadstar or percentage-of-the-fund method. *See Goldberger*, 209 F.3d at 45. In the circumstances of this case, however, the former is the only practical method. Not only is there no "common fund," as Magistrate Judge Boyle correctly noted, but there is also no certainty as to the amount that will ultimately be refunded to the plaintiff class.

14

The impracticality of using the percentage-of-the-fund method is amply demonstrated by the fact that class counsel, while nominally advocating the use of this method, do not actually use the method themselves. Class counsel, who candidly admit that they can only estimate the amount that will be refunded, do not ask the Court to award them a percentage of each plaintiff's refund. Rather, they seek a specific dollar amount – $6.75 million – and seek to justify it by alleging that this constitutes "less than 15 percent" of the $45 million that they estimate will be refunded. Since class counsel themselves apparently lack confidence in the percentage-of-the-fund method, this Court would not use it even if the common fund doctrine applied to this case. Rather, this Court adopts Magistrate Judge Boyle's recommendation that this Court calculate attorneys' fees using the lodestar method.

### III. The Hourly Rate

Class counsel's second objection relates to the manner in which Magistrate Judge Boyle set hourly rates for the various attorneys who worked on behalf of plaintiffs. Citing to *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007), which held that the presumptively reasonable rate is what "a paying client would be willing to pay," class counsel argue that plaintiffs would have retained a lawyer with "class action expertise," that plaintiffs would have been unable to find a lawyer with the requisite expertise in the Eastern District, and that the relevant community is, therefore, "New York City." Objections at 10, 12. Class counsel also argue that the R&R wrongly stated that Southern District rates were similar to those in the Eastern District, asserting that *Marisol v. Guiliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) – the case on which Magistrate Judge Boyle based his estimate of hourly rates in the Southern District of New York – was nine years old and that more recent Southern District cases have permitted attorneys' fees well in excess of $350 per hour. Objections at 11-12. In

15

addition, while admitting that Mr. Davis does not have "a standard hourly rate," class counsel argue that the rates counsel were paid by clients to handle similar actions are strong evidence of market rates, and that Magistrate Judge Boyle's calculations failed to consider the measure of success obtained. Objections at 12-13.

Magistrate Judge Boyle's approach in calculating hourly rates can no longer be adopted, albeit not for the reasons stated in the Objections. Magistrate Judge Boyle found that courts in this district "routinely consider the rates of both the Eastern District of New York as well as the Southern District" in setting hourly rates, and implied that this practice was appropriate. R&R at 8. While this Court does not doubt that this practice was common at the time the R&R was issued, that practice can no longer be followed in light of *Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) – a case which was decided after the R&R was issued. *Simmons* held that "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule," which generally requires courts to use the hourly rates employed in the district in which the court sits. *Id.* at 175. The fact that the requested rates are employed in a geographically proximate district is not sufficient to overcome the presumption. *Id.* at 176.

In this case, class counsel are tacitly requesting that this Court use higher out-of-district rates. First, although class counsel request that this Court use "New York City" rates, most of the cases to which they cite are from the Southern District of New York. Second, while the R&R concluded that hourly rates in the Southern and Eastern District of New York are similar, class counsel correctly note that this conclusion was based on comparison of relatively recent Eastern District cases, *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202 (E.D.N.Y. 2007), and *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323 (E.D.N.Y.

16

Feb. 17, 2006), with an older Southern District case, *Marisol*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000). A survey of more recent Southern District cases suggests that rates in that district have increased in the past decade and are now higher than the rates in this District. *See Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS), 2009 WL 2568529, at *5 (E.D.N.Y. Aug. 5, 2009) (collecting relatively recent Southern District cases awarding rates of $400 - $450 per hour to experienced litigators).

Under the *Simmons* framework, this Court must presume that Eastern District rates apply to this case unless class counsel can overcome the presumption. To overcome that presumption:

> a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.
>
>       \*      \*      \*
>
> The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. ... Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case ... or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons*, 575 F.3d at 175-76.

In a letter filed only four days after the *Simmons* decision was issued, class counsel attempt, *inter alia*, to overcome the presumption in both of the ways suggested by the Second Circuit. First, class counsel argue, based on unspecified portions of the affidavit filed by Mr. Davis in support of Class Counsel's Application, that "no other lawyer approached would take on

this case." Letter to Hon. Sandra L. Townes from Adam D. Mitzner, Esq., dated Aug. 7, 2009, at 2 (emphasis in original). Second, class counsel assert that Mr. Davis is uniquely qualified to handle this litigation, implying that no in-district counsel possessed the requisite expertise. *Id.*

Defendants have not yet responded to these arguments or to the claim – also contained in Mr. Mitzner's August 7, 2009, letter – that rates above those that class counsel request have been granted by Eastern District courts in similar cases. This Court is not prepared to rule on these arguments until defendants have been afforded the opportunity to respond. Accordingly, this matter is recommitted to Magistrate Judge Boyle with instructions (1) to set a briefing schedule that will give class counsel the opportunity to elaborate on the arguments set forth in Mr. Mitzner's letter dated August 7, 2009, and will give defendants a full opportunity to respond; (2) to make findings and recommendations with respect to whether class counsel have overcome the *Simmons* presumption; and (3) to consider whether he wishes to amend his recommendations with respect to hourly rates in light of *Simmons* and the Second Circuit's recent summary order in *Lochren v. County of Suffolk*, No. 08-2723-cv, 2009 WL 2778431 (2d Cir. Sept. 3, 2009).

## IV. *The Reduction in Hours*

Class counsel's third objection relates to Magistrate Judge Boyle's decision to reduce class counsel's hours by 20 percent because roughly 40 percent of the hours requested were accounted for through "block billing," and because the entries for another 21⅔ percent of the hours were insufficiently specific. R&R at 11-13. Class counsel argue, *inter alia*, that Magistrate Boyle failed to take into consideration the amended billing entries attached to the December 2008 supplemental declaration, which allegedly clarified the vague entries. Class counsel also argue that the 20 percent across-the-board reduction was too extreme, citing to an Eastern District case – *Molefi v. Oppenheimer Trust*, No. 03 CV 5631(FB)(VVP), 2007 WL

18

538547 (E.D.N.Y. Feb. 15, 2007) – which imposed only a 15 percent reduction for, among other things, block billing. Indeed, class counsel contend that no deduction whatsoever should have been made for block billing because the R&R did not indicate that any of the tasks listed in the block billing were not compensable or compensable at different rates.

The first portion of this objection is in the nature of a motion for reconsideration. In a motion for reconsideration, the moving party identifies "controlling decisions or data that the court overlooked ... that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). In this case, class counsel is asserting that Magistrate Judge Boyle overlooked a supplemental declaration that would have clarified the "vague" entries.

This Court cannot determine from the R&R precisely which entries the magistrate judge considered vague and, therefore, cannot determine whether the amended billing entries are sufficient to rectify the deficiencies. While this Court suspects that Magistrate Judge Boyle reviewed the supplemental submissions, since it was the magistrate judge himself who suggested that class counsel make these submissions, there is nothing in the R&R itself to confirm this suspicion. Accordingly, this Court construes this portion of the third "objection" to be a motion for reconsideration, and recommits the matter to Magistrate Judge Boyle for a determination. After the magistrate judge makes this determination, this Court will rule on the remaining portions of class counsel's third objection.

## V. Enhancement of the Lodestar Amount

Class counsel's fourth objection relates to that portion of the R&R which held that enhancement of the lodestar amount was inappropriate in this case. First, the objection implicitly challenges that portion of the R&R which quoted *Fink v. City of New York*, 154 F. Supp. 2d 403,

19

414 (E.D.N.Y. 2001), for the proposition that "it is well settled in the Second Circuit that enhancements of the lodestar amount of attorneys' fees are not permissible under fee-shifting statutes." R&R at 17. Class counsel note that the Second Circuit affirmed enhancement of the lodestar in *I.B.*, *supra*, and that *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), states that a district court may adjust the presumptively reasonable fee "upward or downward" in § 1988 cases. Objections at 17. Next, after characterizing the R&R as "reject[ing] the use of a multiplier, largely on the theory that this case was a 'slam dunk' ... without any risk of non-recovery," class counsel argue that the case was not a "slam dunk." Class counsel distinguish *Andree* and *Mejia* on the ground that neither of these cases was a class action, and that there was no guarantee that the plaintiff class would be certified in this case. Finally, class counsel assert that enhancement is appropriate because "the result here is extraordinary," claiming that this action "resulted in a settlement in which plaintiffs receive more than 100% of their damages." Objections at 19.

With respect to the first portion of this objection, this Court agrees with class counsel that an upward adjustment to an attorney's fee can be appropriate in cases where fees are awarded under fee-shifting statutes. The Second Circuit has repeatedly held that courts should apply the procedure set forth in *Hensley* in determining reasonable attorney's fee awards under the IDEA and 42 U.S.C. § 1988. *See, e.g., Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (in determining what fees are reasonable under 42 U.S.C. § 1988, "courts should generally follow the framework set forth by the Supreme Court in *Hensley* ...."); *I.B.*, 336 F.3d at 81 ("We have repeatedly held that we apply the full *Eckerhart* procedure to IDEA fee awards."). Under the *Hensley* framework, enhancement of the lodestar amount is permitted, at least "in some cases of exceptional success." *Hensley*, 461 U.S. at 435. Accordingly, lodestar amounts can be enhanced

under both the IDEA and §1988. *See Blum*, 465 U.S. at 901 (expressly rejecting the argument that an upward adjustment is never appropriate under 42 U.S.C. § 1988).

Although the R&R cites *Fink* for a contrary proposition, R&R at 17, this Court notes that the R&R itself subsequently acknowledges that "upward departures of the lodestar figure are ... permissible ... in certain 'rare' and 'exceptional' cases." R&R at 18 (quoting *Delaware Valley Citizen's Council*, 478 U.S. at 565). Moreover, this Court notes that Magistrate Judge Boyle did not reject class counsel's request for a "multiplier" on the basis that no upward enhancement was possible, but ruled that enhancement was inappropriate under the circumstances of this case.

With respect to the second portion of this objection, this Court does not agree with class counsel's characterization of the R&R as rejecting enhancement "largely on the theory that this case was ... without any risk of non-recovery." Magistrate Judge Boyle expressly noted that "risk of loss" was not a valid basis for enhancement, R&R at 17, and cited to *City of Burlington v. Dague*, 505 U.S. 557 (1992), a case which held that "enhancement for contingency is not permitted under the fee-shifting statutes." *Id.*, 505 U.S. at 567. Accordingly, while the R&R did refer to the case as a "slam dunk," this Court does not construe the R&R as denying enhancement based on the theory that plaintiffs could not lose. After all, "no claim has a 100% chance of success." *Id.*, 505 U.S. at 563.

Rather, the R&R used the "slam dunk" reference as a way of highlighting that class counsel's performance was not exceptional. As the R&R correctly notes, class counsel obtained their results largely by following a trail which had already been blazed for them in *Andree* and *Mejia*. Although this case, as a class action, may have been novel and more complex than *Andree* and *Mejia*, the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel." *Blum*, 465 U.S. at 898.

21

As fee applicants, class counsel bear the burden of proving that an upward adjustment is necessary to the determination of a reasonable fee. *See id.*, 465 U.S. at 898. While there is no question that class counsel "effectuate[d] a substantial settlement for plaintiffs," R&R at 20, this Court cannot find that this was enough to meet class counsel's burden. As *Hensley* itself implies, enhancement should not be awarded in all cases in which a plaintiff's attorney obtains "excellent results." *Hensley*, 461 U.S. at 435. Indeed, "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." *Blum*, 465 U.S. at 900.

In this case, the results – even assuming they can be characterized as "excellent" – were not "superior to [what] one reasonably should expect" for hourly rates of $375 or $350 an hour. *See id.* at 899. Similarly, the fact that the ultimate outcome of the litigation "was of great benefit to a large class of needy people" is not an adequate basis for an upward enhancement. *Id.* at 900. Accordingly, this Court adopts Magistrate Judge Boyle's recommendation that the lodestar amount not be enhanced.

## VI. Expenses

Class counsel's fifth and final objection relates to the recommendation that plaintiffs "be awarded their incurred expenses in the amount of $5,063.99." R&R at 22. Class counsel argue that Magistrate Judge Boyle overlooked that portion of Mr. Davis' Reply Declaration which included receipts providing a basis for awarding an additional $4,753.32 in expenses. Like class counsel's first objection to the calculation of the number of hours expended, this objection is in the nature of a motion for reconsideration. Class counsel are identifying "data that the court overlooked ... that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

The R&R does not explain what documents Magistrate Judge Boyle considered in recommending that plaintiffs "be awarded their incurred expenses in the amount of $5,063.99." R&R at 22. Accordingly, this Court is not in a position to rule on this objection. As in section IV, *ante*, this Court construes this "objection" as a motion for reconsideration, and remits the matter to Magistrate Judge Boyle for a determination.

## CONCLUSION

For the reasons set forth above, this Court adopts those portions of Magistrate Judge Boyle's Report and Recommendation dated February 13, 2009, which recommended (1) using the lodestar method to calculate attorneys' fees and (2) denying class counsel's request that the lodestar amount be enhanced. Those objections to the Report and Recommendation which allege that Magistrate Judge Boyle overlooked certain supplemental submissions in calculating permissible hours and overlooked a reply declaration in calculating expenses are construed as motions for reconsideration, and remitted to Magistrate Judge Boyle for a determination.

In response to class counsel's objection to Magistrate Judge Boyle's recommendations concerning hourly rates, this matter is recommitted to Magistrate Judge Boyle with directions (1) to set a briefing schedule that will give class counsel the opportunity to elaborate on the arguments set forth in Mr. Mitzner's letter dated August 7, 2009, and will give defendants a full opportunity to respond; (2) to make findings and recommendations with respect to whether class counsel have overcome the presumption in favor of application of the "forum rule"; and (3) to consider whether he wishes to amend his recommendations with respect to hourly rates in light of *Simmons* and *Lochren, supra*. After receiving Magistrate Judge Boyle's recommendations concerning the rates issue and determinations concerning the motions for reconsideration, this

Court shall proceed to rule on class counsel's remaining objections and calculate the lodestar amount.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: September 14, 2009
Brooklyn, New York