UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CELESTE GREEN, as Parent and Natural Guardian of
ALIA GREEN, MARSCHELL RUGGS, as Parent and
Natural Guardian of ASHLEY VICTORIA RUGGS,
and JONATHAN and RANDI BOLOS, as Parents and
Natural Guardians of LAUREN BOLOS,

                              Plaintiffs,                    **MEMORANDUM AND ORDER**

              -against-                                      05-CV-429 (SLT) (ETB)

THE CITY OF NEW YORK, THE CITY OF
NEW YORK DEPARTMENT OF SOCIAL SERVICES
HUMAN RESOURCES ADMINISTRATION and
ROBERT DOAR,

                              Defendants.
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

       On December 8, 2009, Magistrate Judge E. Thomas Boyle filed his second report and

recommendation (the "Second R&R") in this action, answering certain questions posed in this

Court's Memorandum and Order dated September 14, 2009, and revising the fee

recommendations contained in his original report and recommendation dated February 13, 2009

(the "First R&R"). Plaintiffs' class counsel ("Class Counsel") and defendants have both filed

"objections" to the Second R&R, which not only object to many of Magistrate Judge Boyle's

recommendations but also seek to raise arguments which were not raised before the magistrate

judge. For the reasons set forth below, all of the objections – with the exception of those relating

to Ms. Herzberg's hourly rate and Mr. Mitzner's travel expenses – are without merit, and this

Court declines to consider any new arguments.

## *BACKGROUND*

       Following the settlement of this action, Class Counsel moved pursuant to Rules 23(g) and

54(d)(2) of the Federal Rules of Civil Procedure for reasonable attorneys' fees and other costs,

requesting that this Court use the percentage-of-the-fund method (or "Fund Method") to award $6.75 million in legal fees, plus approximately $10,000 in expenses. On February 13, 2009, Magistrate Judge Boyle issued his First R&R, recommending that the lodestar method be used to calculate attorneys' fees and that plaintiffs be awarded $823,106.00 in attorneys' fees and $5,063.99 in expenses. R&R at 22. Class Counsel objected, arguing (1) that the First R&R incorrectly rejected the Fund Method, (2) that the hourly rates recommended in that R&R were inconsistent with recent Second Circuit case law, (3) that the R&R incorrectly recommended reducing class counsel's billable hours by 20%, (4) that the lodestar amount should have been enhanced by a "multiplier," and (5) that the magistrate judge overlooked certain receipts in recommending that this Court award only half of the expenses requested. Defendants did not object to the First R&R, but filed a response to plaintiffs' objections in which they argued, *inter alia*, that the hourly rates recommended by Magistrate Judge Boyle were reasonable. City Defendants' Response to Plaintiffs' Objections to the R&R, dated March 13, 2009.

In *Green v. City of New York*, No. 05-CV-429 (SLT)(ETB), 2009 WL 3063059 (E.D.N.Y. Sept. 21, 2009), this Court rejected Class Counsel's first and fourth objections, adopting those portions of the First R&R which recommended (1) using the lodestar method to calculate attorneys' fees and (2) denying Class Counsel's request that the lodestar amount be enhanced. This Court construed those objections which alleged that Magistrate Judge Boyle overlooked certain supplemental submissions in calculating permissible hours and overlooked a reply declaration in calculating expenses as motions for reconsideration, and remitted them to Magistrate Judge Boyle for a determination. In addition, noting that *Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) – a case decided after Magistrate Judge issued the First R&R – had implications for the manner in which the lodestar amount was calculated, this

2

Court recommitted the matter to Magistrate Judge Boyle. The Court directed, *inter alia*, that Magistrate Judge Boyle "make findings and recommendations with respect to whether class counsel have overcome the presumption in favor of application of the 'forum rule'" and that the magistrate judge "consider whether he wishe[d] to amend his recommendations with respect to hourly rates in light of *Simmons* and *Lochren* [*v. County of Suffolk*, No. 08-2723-cv, 2009 WL 2778431 (2d Cir. Sept. 3, 2009)]." *See Green*, 2009 WL 3063059, at *13.

On remand, Magistrate Judge Boyle afforded both parties the opportunity to brief issues relating to the determination of the lodestar amount. On October 30, 2009, Class Counsel filed a "Supplemental Memorandum of Law regarding Attorney's Fees" (the "Supplemental Memo"), raising five issues. First, listing eight or nine class actions in which attorneys had recovered fees in excess of the amounts recommended by Magistrate Judge Boyle, Class Counsel asserted that "Eastern District rates for class action lawyers are higher than the rates recommended in the [First] R&R." Supplemental Memo at 3. Second, Class Counsel asserted that the "forum rule" should not have been applied to Mr. Davis, asserting that he "possessed exactly the kind of special expertise the Second Circuit was referring to in *Simmons*." *Id.* at 6. Third, citing to *Farrar v. Hobby*, 506 U.S. 103 (1992), Class Counsel argued that "the degree of success obtained" was the "most critical factor" in determining reasonable attorneys' fees, and that the "extraordinary result achieved" in this case justified award "rates at the higher end" of the permissible range. *Id.* at 8-9.

Fourth, Class Counsel argued that the billable hours should not have been reduced by 20% because of vagueness and block billing. Specifically, Class Counsel noted that, on December 5, 2008, they had submitted "revised billing entries that sought to provide clarification to some of the vagueness concerns." *Id.* at 9. Fifth and finally, Class Counsel argued that

3

Magistrate Judge Boyle had overlooked Exhibit E to the Reply Declaration of Howard S. Davis, alleging that this exhibit documented additional expenses and requesting that Magistrate Judge Boyle revise the expense figure to $9,827.31. *Id.* at 12. Class Counsel made no mention of post-judgment interest.

Defendants filed a memorandum of law in opposition to the Supplemental Memo, in which they argued solely that the hourly rates recommended in the First R&R were too high. First, citing to cases decided following the First R&R, defendants argued that the hourly rates recommended for Messrs. Davis and Mitzner should be reduced by $100 apiece, to $275 per hour for Mr. Davis and $250 per hour for Mr. Mitzner. Second, defendants argued that Class Counsel had submitted insufficient evidence with respect to the remaining four attorneys and urged this Court to exercise its discretion and deny compensation for these attorneys. Defendants did not make any arguments with regard to the hours billed.

In his Second R&R, Magistrate Judge Boyle conceded that he had overlooked the expenses documented in Mr. Davis's Reply Declaration. Noting that Exhibit E to the Davis Declaration established $4,753.32 in additional expenses, and that the First R&R recommended awarding $5,073.99, Magistrate Judge Boyle recommended that Class Counsel be permitted to recoup $9,817.31.

Magistrate Judge Boyle did not expressly address Class Counsel's third argument, but rejected the remaining three arguments. With respect to Class Counsel's first argument, the magistrate judge noted that he had "found nothing to support [the] contention that, in general, class action attorneys are entitled to higher hourly rates than non-class action attorneys." Second R&R at 6. Relying on a recent district court opinion, *Melnick v. Press*, No. 06-CV-6686 (JFB)(ARL), 2009 WL 2824586 (E.D.N.Y. Aug. 28, 2009), Magistrate Judge Boyle concluded

that the permissible range of attorneys' fees in this district is $200 to $375 per hour for partners, and $100 to $295 per hour for associates. Second R&R at 7. He distinguished the cases cited by Class Counsel as "large complex multi-district products liability litigations, consolidated securities fraud class actions, tobacco litigations, and common fund cases," *id.*, and cited various district court opinions from the Southern District of New York for the proposition that attorneys in civil rights class actions are "routinely awarded rates in line with those set forth above." *Id.*

With respect to Class Counsel's second argument, Magistrate Judge Boyle ruled that Class Counsel had not made the "particularized showing" necessary under *Simmons* to exempt Mr. Davis from the "forum rule." *Id.* at 8. The magistrate judge implied that the only factual allegations in support of that showing were contained in Mr. Davis's Supplemental Declaration, which he characterized as

> consist[ing] of substantially nothing more than two paragraphs stating that he was contacted by plaintiffs' counsel in the *Andree* case concerning retention 'to provide expert assistance on behalf of the plaintiffs in the prosecution of their case based upon [his] extensive experience ...[,]' was sent a copy of the complaint in *Andree* and [after] 'further conversations ensued' ... was ultimately not retained in that matter.

*Id.* at 8-9 (internal citations omitted). Magistrate Judge Boyle found this showing insufficient to establish that a "reasonable client would have chosen to use [Mr.] Davis and that without [Mr.] Davis, plaintiffs would have obtained an inferior result." *Id.* at 8.

With respect to Class Counsel's fourth argument, Magistrate Boyle conceded that he had "relied on an outdated set of billing records" in recommending that Class Counsel's hours be reduced by 20% "for block billing and vague billing entries." *Id.* at 9. However, the updated billing entries, while no longer vague, still contained "a significant amount of block billing." *Id.* Citing to three district court cases which had cut billable hours up to 15% for block billing,

5

Magistrate Judge Boyle recommended that this Court reduce Class Counsel's hours by 15% – not 20% – in calculating the lodestar. *Id.* at 9-10. However, Magistrate Judge Boyle continued to recommend that Class Counsel be permitted to recover for only half of the 37.2 hours which Mr. Mitzner allegedly spent traveling to and from court appearances. *Id.* at 10.

### Objections to the Second R&R

On December 17, 2009, Class Counsel filed "objections" to the Second R&R. These objections largely repeat the three arguments that Magistrate Judge Boyle rejected, *see* pp. 4-6, *ante*, and the argument that the magistrate judge failed to address – namely, that the magistrate judge failed to consider the success Class Counsel obtained. In addition, Class Counsel raise an argument which had not previously been addressed to the Magistrate Judge, asserting that the fee award should include post-judgment interest from November 14, 2008 – the date on which the Settlement Agreement was approved.

On December 28, 2009, defendants also filed objections, arguing, *inter alia*, that the hourly rates recommended for Class Counsel were too high; that Magistrate Judge Boyle failed to recognize that many tasks performed by Messrs. Davis and Mitzner could have been performed by junior associates or paralegals; that the Second R&R should have denied fees altogether to attorneys who failed to provide adequate biographical information; and that Magistrate Judge Boyle should not have recommended decreasing to 15% the across-the-board reduction in Class Counsel's billable hours for "block billing." Other "objections" advanced by defendants are more in the nature of responses to Class Counsel's arguments. For example, defendants argue that Magistrate Judge Boyle was correct in finding that Class Counsel had not made a showing

sufficient to overcome the presumption in favor of the "forum rule," and that post-judgment interest should not be awarded.[1]

## DISCUSSION

### I. The Standard of Review

Under 28 U.S.C. § 636(b)(1), if any party serves and files written objections to a magistrate judge's recommendations within fourteen days of being served with a copy of thereof, a district court must "make a de novo determination of those portions of the report or ... recommendations to which objection is made." *Id.* Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). However, "new claims ... presented in the form of, or along with, 'objections ...' should be dismissed." *Pierce v. Mance*, No. 08 Civ. 4736 (LTS) (KNF), 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009) (citing *Gonzalez v. Garvin*, No. 99 Civ. 11062, 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002), and *Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 WL 445638, at *4 n. 2 (S.D.N.Y. Aug. 17, 1994)). Considering such claims would "undermine the authority of the Magistrate Judge by allowing

---

[1]Class Counsel request that this Court strike defendants' objections, arguing that these objections to the December 8, 2009, R&R had to be filed by December 18, 2009, and are untimely. Class Counsel's Request to Strike New York City's Objections to the Report at 1-2. However, Class Counsel's calculations are incorrect. One week before Magistrate Judge Boyle issued the Second R&R, both Fed. R. Civ. P. 72(b)(2) and 28 U.S.C. § 636(b)(1)(C) were amended to permit a party to file objections within 14 calendar days of service of a report and recommendation. Moreover, because the Second R&R was served electronically, an additional three days was added to the 14 days. *See* Fed. R. Civ. P. 6(d) ("[w]hen a party ... must act within a specified time after service and service is made under Rule 5(b)(2) ... (E) ...[*i.e.*, by "electronic means"], 3 days are added after the period would otherwise expire ...."). Since the Second R&R was served on December 8, 2009, the 17 days ended on Christmas Day. However, because Christmas Day is a legal holiday, Fed. R. Civ. P. 6(a)(4)(A), defendants' time to file ran to the next day that was not a Saturday, Sunday, or legal holiday: December 28, 2009. *See* Fed. R. Civ. P. 6(a)(3). Therefore, defendants' objections, which were filed on that day, are timely and must be addressed along with Class Counsel's objections.

litigants the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar*, 1994 WL 445638, at *4 n. 2.

## *II. The Forum Rule*

Although Class Counsel's papers address the issue of hourly rates before discussing the "forum rule," it makes more sense to address these issues in the opposite order. Accordingly, this Court will begin by addressing Class Counsel's objections to Magistrate Judge Boyle's recommendation that this Court apply Eastern District rates.

Under the "forum rule," courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 119 (2d Cir. 2007) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987)). "[W]hen faced with a request for an award of higher out-of-district rates, a district court must ... apply a presumption in favor of application of the forum rule" unless a litigant can overcome that presumption by "persuasively establish[ing] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). Specifically, "[t]he party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. In assessing that likelihood, a court must "consider experience-based, objective factors" such as "counsel's special expertise in litigating the particular type of case ...." *Id.* "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case ... or by establishing, in

a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* (internal citation omitted).

In his Second R&R, Magistrate Judge Boyle found that Class Counsel had not made an adequate showing to overcome the presumption in favor of applying the forum rule. Second R&R at 5. Class Counsel object to this ruling, implying that Magistrate Judge Boyle may have overlooked information contained in the Declaration of Howard S. Davis, dated June 7, 2008 (the "Davis Declaration"), and attempting to analogize this case to *Germain v. County of Suffolk*, No. 07-CV-2523 (ADS)(ARL), 2009 WL 4546671 (E.D.N.Y. Dec. 5, 2009). Although Class Counsel's objections assert that "out-of-district rates should be applied to the lawyers in this case," Class Counsel make no effort to overcome the presumption with respect to any lawyer other than Mr. Davis. This Court will therefore focus exclusively on Mr. Davis and his expertise.

According to the Davis Declaration, Mr. Davis graduated from New York University Law School in 1966 and was admitted to practice in New York State in 1967. Davis Declaration at ¶ 3. By his own admission, the "vast majority" of Mr. Davis's career has "involved handling ... significant personal injury actions, with a heavy emphasis on medical malpractice litigation ...." *Id.* at ¶ 4. Since 2000, Mr. Davis has "devoted substantial time" working on a *pro bono* basis for the Partnership for Children's Rights ("PFCR"), representing "disadvantaged infants" in actions to recover Social Security Disability Benefits. *Id.* at ¶ 5. Mr. Davis does not allege that he has ever brought an action pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, but represents that he developed an "expertise" in the IDEA "because the special education classifications and services [his] clients received under the IDEA ha[d] a large impact on their Social Security benefits application." Davis Declaration at ¶ 5.

Sometime after March 2004, Mr. Davis was contacted by Mitchell Gittin of Fitzgerald &
Fitzgerald, P.C., which was then representing a class of parents who were suing Nassau County
on behalf of their minor children in an action very similar to the one at bar: *Andree ex rel.*
*Andree v. County of Nassau.* By that time, Judge Spatt had denied Nassau County's motion to
dismiss with respect to the plaintiffs' claims alleging violations of the IDEA and the Equal
Protection Clause and Due Process Clauses. *See Andree*, 311 F. Supp. 2d 325 (E.D.N.Y. 2004).
Mr. Davis alleges, upon information and belief, that Mr. Gittin was interested in retaining him
"to provide expert assistance ... based on [his] extensive experience in matters involving the ...
IDEA ..., Medicaid, personal injury and medical malpractice." Supplemental Declaration of
Howard S. Davis ("Supplemental Davis Declaration") at ¶ 3. Fitzgerald & Fitzgerald forwarded
Mr. Davis a copy of the complaint but, after further discussions, elected not to retain him, telling
him that it "did not want to share its file with another attorney." *Id.* at ¶ 4. Nonetheless, Mr.
Davis interprets the mere fact that Fitzgerald & Fitzgerald contacted him as proof that his
"expertise in IDEA, Medicaid, personal injury and medical malpractice law is exceedingly rare."
*Id.* at ¶ 5.

According to his time sheets, Mr. Davis began working on this case in mid-May 2004,
after learning of the *Andree* case. Davis Declaration, Ex. B, at 1. On May 19, 2004, Mr. Davis
met with Fred Sanders, a lawyer at Morea & Schwartz, to "discuss[] the possibility of Morea &
Schwartz being counsel in [a] class action case." *Id.* The next day, Mr. Davis mailed Mr.
Sanders a copy of the complaint and decision in *Andree*. *Id.* Although it is not clear how
discussions with Mr. Sanders progressed, this Court notes that Mr. Davis makes no mention of
meeting with Morea & Schwartz again until October 7, 2004. *Id.* at 3.

In the interim, Mr. Davis reviewed his own warehoused files and identified four former personal injury clients – including the three class representatives in this case – whose recoveries were subjected to inappropriate Medicaid liens. *Id.* at 2. Mr. Davis also approached several other law firms that he "believed possessed the necessary expertise to adequately represent the plaintiffs in this class action case." Davis Declaration at ¶ 18. Specifically, Mr. Davis met with lawyers at Rappaport, Glass, Greene & Levine – a small personal injury law firm with offices in Manhattan and Hauppauge, New York – and Quaranta & Associates – a small personal injury law firm based in Mt. Kisco, New York. *Id.*; *see* http://www.kqlaw.com; http://www.rapplaw.com. Both firms declined the matter, telling Mr. Davis that "they were concerned that the matter would require a significant amount of time for which they would not be adequately compensated." *Id.*

On August 11, 2004, Mr. Davis attended a seminar entitled, "A Primer on Class Actions for the Non-Class Action Litigator." *Id.* at ¶ 19. Mr. Davis was apparently there to learn the rudiments of class actions; indeed, he took so many notes that he spent two hours on August 14, 2004, just reviewing them. Davis Declaration, Ex. B, at 2. While at the seminar, Mr. Davis approached several other attorneys, including John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli – a Cleveland firm – and Daniel R. Karon, then of Weinstein Kitchenoff Scarlot Karon & Goldman – a Philadelphia firm. *Id.* According to Mr. Davis, "neither of these attorneys expressed any interest in incurring the risk of taking on this case." *Id.* PFCR, the non-profit organization to which Mr. Davis was then donating a "substantial amount of time," also "declined to take the case, claiming that it would take up far too much of their resources." *Id.* at ¶ 20.

By the end of 2004, Mr. Davis had reached an agreement with Morea & Schwartz and

began prosecuting this action with Adam Mitzner, then a member of that firm. Although Mr.

Davis considers himself "one of the few lawyers in the country who combine a thorough

knowledge of ... plaintiff's personal injury law, Medicaid law, medical knowledge, and

representation of children regarding the IDEA," Davis Declaration at ¶ 7, the docket sheet and

Mr. Davis's own billing records indicate that Mr. Mitzner drafted most, if not all, of the papers

submitted to this Court in connection with this case. Indeed, Mr. Davis's most noteworthy

contribution to the litigation apparently related to his familiarity with Medicaid codes, which

enabled him to identify a category of services for which the class plaintiffs should not have been

charged. *See* Plaintiffs' Class Counsel's Memorandum of Law Objecting to the Report and

Recommendation dated Dec. 8, 2009 ("Objections to Second R&R") at 10-12.

In light of the foregoing, this Court wholeheartedly concurs with Magistrate Judge

Boyle's conclusion that Mr. Davis's showing was insufficient to overcome the presumption in

favor of the forum rule. Although Mr. Davis claims to have "special expertise in litigating [this]

particular type of case," Objections to Second R&R at 10-11, there is no evidence to substantiate

that claim. This Court does not question that Mr. Davis is a very experienced personal injury

lawyer and that, by virtue of that experience, he has considerable knowledge of medicine and

Medicaid practices. However, this Court notes that Mr. Davis's only experience with the IDEA

has been in the course of part-time *pro bono* work performed over the course of the last decade,

in which Mr. Davis sought to recover Social Security Disability Benefits. Even if "special

education classifications and services [his] clients received under the IDEA ha[d] a large impact

on their Social Security benefits application," Davis Declaration at ¶ 5, this exposure to the IDEA

does not qualify Mr. Davis as an expert in this area of the law. Accordingly, this Court cannot

credit Mr. Davis's assertion that he is "one of the few lawyers in the country" capable of bringing this sort of action. Davis Declaration at ¶ 7. Indeed, Mr. Davis based this allegation solely on his belief that he personally had "never encountered anyone with the mastery of each [of these areas] that [he] possess[es]." *Id.*

Class counsel's claim that the class plaintiffs could not have found qualified class counsel in the Eastern District of New York is similarly unpersuasive. Mr. Davis names only four law firms (other than Morea & Schwartz) that he attempted to interest in this litigation. Only one of those – Rappaport, Glass, Greene & Levine – even had an office in this district. Class Counsel do not assert, much less prove, that there are no qualified counsel in this district. Rather, having conducted an internet search for class action lawyers in this district, and having found that "nearly all lawyers" located during that search also have Manhattan addresses, Class Counsel conclude only that "it is *possible* a class action plaintiff would have had to retain an out-of-district attorney." Objections to Second R&R at 13 (emphasis added). This conjecture is insufficient to sustain the weighty burden which *Simmons* places on litigants seeking to apply out-of-district rates.

Class Counsel's attempt to analogize this case to *Germain v. County of Suffolk, supra*, is also unavailing. In *Germain*, there was evidence that the plaintiff contacted "other local civil rights attorneys in Long Island" after her original counsel was disqualified by the court. *Germain*, 2009 WL 4546671, at *3. The plaintiff retained out-of district counsel only after the local attorneys declined to take the case on a contingent fee basis. *Id.* Under those circumstances, the *Germain* Court concluded that "it was reasonable for the Plaintiff to believe that [out-of-district counsel], an experienced civil rights lawyer, could produce a substantially better result than any relief she might have been able to obtain acting pro se." *Id.*

13

In this case, however, the named plaintiffs never faced the prospect of proceeding *pro se*. In fact, Mr. Davis himself alerted the named plaintiffs -- all of whom were his former personal injury clients -- to the possibility of bringing an action, then sought co-counsel with class-action experience. As noted above, Mr. Davis approached only one other law firm with any ties whatsoever to this district, and that law firm rejected this action for pecuniary reasons, not because they lacked the necessary expertise. Moreover, the fact that this one firm thought the case might prove unprofitable in light of whatever fee sharing arrangement Mr. Davis may have proposed does not establish that the firm would have rejected the case if they had been approached by the plaintiffs themselves.

### III. Hourly rates

Having determined that Eastern District rates should apply to this case, this Court next turns to the question of what rates should apply. Magistrate Judge Boyle recommended that this Court use $375 per hour in calculating Mr. Davis's fee; $350 per hour in calculating the fees of Mr. Mitzner and his partner, Aliza Herzberg; $150 to $200 per hour in awarding fees to their associates and $100 per hour for paralegal tasks. Class Counsel object to these recommendations, asserting that Magistrate Judge Boyle is recommending fees that are far less than those awarded in other class action cases in this district. In support of this argument, Class Counsel cite to ten cases in which senior partners were awarded as much as $925 per hour and associates were awarded as much as $525. Objections to Second R&R at 4-5. Defendants also object to this portion of the Second R&R, principally arguing that the hourly rates recommended for Messrs. Davis and Mitzner are too high and should be reduced by $100 apiece, to $275 per hour for Mr. Davis and $250 per hour for Mr. Mitzner. In addition, defendants argue that the remaining four plaintiffs' attorneys -- partner Aliza Herzberg and associates Jason Canales,

14

Katerina Valhos, and Dina Weinberg – should not be permitted to recover any attorneys' fees at all because Class Counsel submitted insufficient evidence with respect to their qualifications.

Eight of the ten cases cited in Class Counsel's objections were also cited in the Supplemental Memo. In his Second R&R, Magistrate Judge Boyle rejected Class Counsel's implication that these cases established reasonable rates for all class action attorneys, noting:

> [T]he cases to which plaintiff cite involved large complex multi-district products liability litigations, consolidated securities fraud class actions, tobacco litigations, and common fund cases, all of which are inapposite to [this] ... action.

Second R&R at 7. Class Counsel implicitly concedes that Magistrate Judge Boyle is correct with respect to six of the eight cases cited, but argues that two of the cases cited – *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006), and *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) – were "fairly straightforward class actions." Objections to Second R&R at 8. In addition, Class Counsel cite to a case which was not mentioned in their Supplemental Memo – *Steinberg v. Nationwide Mutual Ins. Co.*, 612 F. Supp. 2d 219 (E.D.N.Y. 2009) – as another "fairly straightforward class action" in which attorneys' fees of up to $790 per hour were permitted. *Id.*

Preliminarily, this Court notes that *Steinberg* cannot fairly be compared to this litigation. *Steinberg* was a decade-long class action involving an insurance company practice which affected millions of consumers nationwide. 612 F. Supp. 2d at 220. This action, in contrast, involved a limited number of New York City residents. Indeed, according to Class Counsel, only 485 claims had been filed as of December 9, 2009. Letter to Hon. Sandra L. Townes from Adam D. Mitzner, dated Dec. 9, 2009, at 2.

Moreover, even if *Steinberg*, *Reade-Alvarez* and *Weil* could accurately be characterized as "fairly straightforward class actions," they would nonetheless be distinguishable in one important regard. In all three cases, the billing rates were either uncontested or specified in the settlement agreement itself. *See Steinberg*, 612 F. Supp. 2d at 223 ("Notably, Nationwide does not dispute the billing rates proposed by [plaintiffs' class counsel]."); *Reade-Alvarez*, 2006 WL 3681138, at *7-*9 (attorneys' fees of $50,000, specified in settlement agreement, were upheld despite objections in the course of final approval of settlement pursuant to Fed. R. Civ. P. 23(e)); *Weil*, 188 F. Supp. 2d at 269 (defendants "effectively agreed" to rates in settlement). In this case, on the other hand, the parties could not agree on the appropriate hourly rates and the issue remains strenuously contested. Accordingly, this Court fully concurs with Magistrate Judge Boyle's conclusion that the class action cases cited by Class Counsel are inapposite.

Interestingly, Class Counsel's Objections to the Second R&R contain no attempt to distinguish *Melnick v. Press*, No. 06-CV-6686 (JFB)(ARL), 2009 WL 2824586 (E.D.N.Y. Aug. 28, 2009), the case on which Magistrate Judge Boyle principally relied in determining the hourly rates in this district. In that case – decided just over four months ago – Judge Bianco performed his own exhaustive research in an effort to ascertain the prevailing market rates for lawyers in the Eastern District of New York. Judge Bianco reviewed numerous cases, all of which were decided in this district and most of which were decided between 2007 and 2009, and concluded that current hourly rates in this district are $200-$375 for partners and $100-$295 for associates.

Judge Bianco's conclusions are also consistent with the post-*Melnick* case law, cited in defendants' objections to the Second R&R. Only one of the six post-*Melnick* cases cited by defendants – *Morgenstern v. County of Nassau*, No. 04-CV-0058 (JS)(ARL), 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) – awarded partners more than $375, and even that case

awarded only $400. Similarly, in *Gutman v. Klein*, No. 03 Civ. 1570 (BMC), 2009 WL 3296072 (E.D.N.Y. Oct. 13, 2009) – the only post-*Melnick* case cited in Class Counsel's objection to the Second R&R aside from a clearly inapposite multi-district class action – Judge Cogan adopted Magistrate Judge Levy's recommendation that partners be awarded $300-$400 per hour, that senior associates be awarded $200-$300 per hour and that junior associates be awarded $100 - $200 per hour. *Id.*, 2009 WL 3296072, at *2.

Even assuming, *arguendo*, that the top rate for partners has increased to $400 and that the top rate for associates has increased to $300, this Court would not be willing to award any more than is recommended by Magistrate Judge Boyle. "In determining what rate a paying client would be willing to pay, [a] district court should consider, among others, the *Johnson* factors ...." *Arbor Hill*, 493 F.3d at 117-18, *amended and superceded on other grounds*, 522 F.3d 182, 190 (2d Cir. 2007). The *Johnson* factors, first espoused in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989), are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor* Hill, 522 F.3d at 187 n. 3 (citing *Johnson*, 488 F.2d at 717-19). It is not necessary for district courts to "recite and make separate finding as to all twelve Johnson factors." *Lochren v.*

*County of Suffolk*, No. 08-2723-cv, 2009 WL 2778431, at *2 (2d Cir. Sept. 3, 2009) (summary order).

Since the Second R&R does not cite to *Johnson* or specifically discuss any of the twelve factors, this Court has considered de novo all twelve *Johnson* factors. This Court notes that, for a class action, this case was neither particularly lengthy nor labor-intensive. Moreover, the legal questions raised in the case were neither novel nor particularly complex. Indeed, as this Court noted in its September 21, 2009, memorandum and order, Class Counsel "obtained their results largely by following a trail which had already been blazed for them in *Andree* and *Mejia* [*v. City of New York*, S.D.N.Y. Docket No. 01 Civ. 3381]." *Green*, 2009 WL 3063059 at *12. While this class action may have been more complex than *Andree* and *Mejia*, the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)).

While the level of skill required to prosecute this case does not approach that needed to handle multi-district class actions, this case nonetheless required lawyers with considerable experience. Since Class Counsel are both capable and reputable, this Court does not doubt that they could have worked on other matters had they decided not to prosecute this action. Moreover, since Mr. Davis was used to working under a contingency fee arrangement in his personal injury practice and Mr. Mitzner was used to charging client hourly fees in excess of the range typically awarded in this district, this Court does not doubt that Class Counsel might have made more money had they pursued other matters. However, Class Counsel, as experienced attorneys, must also have realized that these sorts of cases are not as lucrative as working for corporate clients or prosecuting meritorious medical malpractice actions. As Mr. Davis, who has

18

donated "substantial time" to the PFCR, doubtless knows, these sorts of cases offer other, less tangible, rewards.

Although the Second R&R did not expressly acknowledge the level of success Class Counsel achieved, it did so implicitly by recommending rates near the top of the permissible range. In light of the fact that Class Counsel have worked a good result for their clients, and after considering the other *Johnson* factors, this Court agrees with Magistrate Judge Boyle that Messrs. Davis and Mitzner deserve hourly fees near the high end of the range permitted in this district. Accordingly, this Court will adopt Magistrate Judge Boyle's recommendation that Mr. Davis receive $375 per hour and that Mr. Mitzner receive $350 per hour.

This Court does not agree, however, with Magistrate Judge Boyle's recommendation that this Court award $350 per hour to Ms. Herzberg. Magistrate Judge Boyle specifically noted that Class Counsel initially failed to provide the necessary biographical information for Ms. Herzberg and for three associates working her firm: Jason Canales, Katerina Valhos and Dina Weinberg. Although Class Counsel attempted to rectify that deficiency in submissions accompanying their Supplemental Memo, Magistrate Judge Boyle held that it would be improper to consider these supplemental submissions. Nonetheless, while Magistrate Judge Boyle properly recommended awarding the three associates rates in the mid-range of the permissible rates, he recommended granting Ms. Herzberg the exact same rate as Mr. Mitzner.

The biographical information provided for Ms. Herzberg does not justify awarding her a rate near the top of the permissible range. Accordingly, this Court will reduce Ms. Herzberg's hourly rate to $300 – approximately the middle of the range of rates for partners. This approach is consistent with the decision to award the associates rates roughly in the middle of the permissible range of hourly rates for associates. While this Court recognizes that other courts

19

have disallowed fees altogether in the absence of adequate biographical information, this Court finds that such a result would be unduly harsh under the circumstances of this case.

## IV. The Hours Worked

In his First R&R, Magistrate Judge Boyle, noting that Class Counsel's time sheets contained vague entries and block billing, recommended an across-the-board reduction of 20% in the hours requested by Class Counsel. After this Court remanded the matter, the magistrate judge reviewed the parties' motion papers and ascertained that he had "relied on an outdated set of billing records when making that recommendation." Second R&R at 9. Magistrate Judge Boyle opined that the most recent entries rectified the vagueness problems, but still contained a "substantial amount of block billing." *Id.* Accordingly, Magistrate Judge Boyle recommended reducing the across-the-board reduction from 20% to 15%. *Id.* at 10. Magistrate Judge Boyle continued to recommend that Mr. Mitzner's travel-related entries be reduced by 50% prior to calculating the across-the-board reduction. *Id.*

Class Counsel object, principally arguing that reductions for block billing are inappropriate when all of the tasks co-mingled in a single entry are compensable. In addition, Class Counsel fault the methodology employed by Magistrate Judge Boyle with respect to Mr. Mitzner's travel expenses. First, because the travel-related entries are all contained within block billing, Class Counsel urge this Court to estimate the travel time involved, rather than to reduce the entire entry by 50%. Second, Class Counsel argue that travel-related entries – having already been reduced by 50% – should not be further reduced by 15%, asserting that this exacts a double penalty.

Defendants also object to this portion of the Second R&R, citing to a July 25, 2008, declaration in which defendant's counsel calculated that over 38% of the hours submitted by Mr.

20

Mitzner, and over 28% of the hours submitted by Mr. Davis "were comprised of block billing." Defendant's Objections to the Second R&R at 7 (citing Declaration of Elizabeth Wells, dated July 25, 2008, Ex. D & E). In addition, defendants argue that "many tasks performed by Mr. Davis and Mr. Mitzner should have been performed by a junior associate or a paralegal," and that this Court should reduce the hourly rates recoverable for those tasks. Defendant's Objections to the Second R&R at 5.

### A. Block Billing

Class Counsel's first argument implies that it is improper to reduce fees for block billing unless a court can determine that charges co-mingled within one entry were either unreasonable or not compensable. Citing to various district court cases, Class Counsel argue that any reduction in hours billed would be inconsistent "with the holdings of courts in this Circuit that have imposed 'reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate.'" Objections to Second R&R at 15 (quoting *Hnot v. Willis Group Holdings, Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008)). Class Counsel note that the Second R&R "does not suggest any charges were improper," and assert that "there is no basis for any reduction in time" if all tasks are compensable and the overall hours are reasonable. *Id.* at 16.

This argument misapprehends the basis for Magistrate Judge Boyle's recommendation. Although *Hnot* opines that the majority of courts "have ordered ... reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate," *Hnot* also acknowledges that "[s]ome courts have ordered across-the-board

21

reductions based entirely on the 'inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable.'" *Hnot*, 2008 WL 1166309, at *6 (quoting *Aiello v. Town of Brookhaven*, No. 94 Civ. 2622 (FB)(WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005)). In recommending an across-the-board reduction on the ground that "block billing 'renders it difficult to determine whether, and/or the extent to which, the work done by ... attorneys is duplicative or unnecessary,'" Second R&R at 9, Magistrate Judge Boyle was quoting language from *Aiello* which has been widely cited in cases embracing the minority view. This view recognizes that the obfuscation inherent in block billing frequently renders it impossible to determine the reasonableness of specific charges aggregated within the block billing. Since Magistrate Judge Boyle was adopting this view, it would make no sense to reject his recommendation on the basis that he never determined that specific charges were unreasonable.

Although the Second R&R is not specific with respect to why Magistrate Judge Boyle chose 15% as the appropriate percentage reduction, this Court perceives a basis for that decision in the record. According to defendants' counsel's painstaking analysis, over 38% of the hours submitted by Mr. Mitzner, and over 28% of the hours submitted by Mr. Davis, were comprised of block billing. *See* Declaration of Elizabeth A. Wells, dated July 25, 2008, Ex. D & E. However, as Class Counsel correctly note, not all instances of block billing raise concerns regarding the reasonableness of individual charges included therein. Based on its own review of the time records in this case, this Court finds that approximately half of the block billing in Mr. Davis's records, and about 40% of the block billing in Mr. Mitzner's records, raised these concerns. Accordingly, this Court finds the 15% reduction to be entirely reasonable.

## B. *Hours Charged by Messrs. Davis and Mitzner*

In their objections to the Second R&R, defendants raise arguments with respect to specific entries in the contemporaneous time records submitted by Messrs. Davis and Mitzner. These same arguments were raised — for the first and last time – in defendants' counsel's July 25, 2008, declaration in opposition to Class Counsel's application for attorneys' fees. See Declaration of Elizabeth A. Wells, dated July 25, 2008, Exs. F & G. Magistrate Judge Boyle failed to address these arguments in his First R&R, but defendants did not file any objections.

The failure to file a timely objection with respect to a report and recommendation generally waives any further judicial review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985) *DeLeon v. Strack*, 234 F.3d. 84, 86 (2d. Cir. 2000); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d. Cir. 2000). However, in this case, defendants had another chance to raise these arguments in the supplemental submission they filed before Magistrate Judge Boyle issued his Second R&R. The defendants chose not avail themselves of this opportunity. Rather, defendants argued only that the hourly rates recommended in the First R&R were too high, and did not make any arguments with regard to the hours billed. Since defendants essentially abandoned these arguments, this Court declines to consider these claims at this late juncture. *See Pierce*, 2009 WL 1754904, at *1; *Gonzalez*, 2002 WL 655164, at *2; *Abu-Nassar*, 1994 WL 445638, at *5 n.2.

## V. *Travel Expenses*

Finally, Class Counsel object to Magistrate Judge Boyle's decision to reduce by both 50% and 15% those entries in Mr. Mitzner's time records which contain travel expenses. All six of these entries are instances of block billing. Since the Court cannot speculate about what

23

percentage of the total time billed in each entry was spent traveling, Magistrate Judge Boyle appropriately reduced each of the six entries by 50% – the customary reduction for traveling expenses. However, this Court agrees with Class Counsel that further reducing these entries by 15% would exact a double penalty for block billing. Accordingly, this Court will reduce these six entries (totaling 37.2 hours) by only 50%, and will apply the 15% reduction only to the remainder of Mr. Mitzner's time (1801.88 hours).

In addition, this Court will rectify a minor arithmetic error in Magistrate Judge Boyle's calculations of the billable hours. Although the magistrate judge recommended an across-the-board reduction of 15% in all attorneys' fees, he continued to apply a 20% reduction to the 12.5 hours billed by Ms. Herzberg. Accordingly, Ms. Herzberg should be compensated for 10.625 hours, not 10 hours.

## VI. Interest

Finally, Class Counsel request that this Court award post-judgment interest on the attorneys' fees, starting on November 14, 2008 – the date on which the Settlement Agreement in this case was approved. This argument is not in the nature of an objection to the Second R&R, but an entirely new argument. Class Counsel did not raise the argument before Magistrate Judge Boyle, who did not address it in either of his R&Rs. Accordingly, for the same reasons set forth on page 23, *ante*, this Court declines to consider this claim at this juncture. *See Pierce*, 2009 WL 1754904, at *1; *Gonzalez*, 2002 WL 655164, at *2; *Abu-Nassar*, 1994 WL 445638, at *4 n.2.

Even if this Court were to address this argument, it would find that it lacked merit. "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage

24

and the payment by the defendant." *Katser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990). Accordingly, under 28 U.S.C. § 1961(a), postjudgment interest commences from the date a judgment is "ascertained in a meaningful way." *Id.* at 836. Although the Second Circuit has yet to decide the question of whether 28 U.S.C. § 1961 applies to court-ordered settlements, that Court has implied, in an unreported decision, that a monetary judgment has not been "ascertained in a meaningful way" until a court has determined how much, and when, a party must pay. *See Padberg v. Giuliani*, 295 Fed. Appx. 455, 457 (2d Cir. 2008).

The settlement agreement in this case did not specify the amount of attorneys' fees to which Class Counsel are entitled. Rather, the agreement envisioned that this issue would be determined in post-trial litigation, which continues to this day. Indeed, the issue of what fees Class Counsel may collect, and from whom, may not be finally resolved until the Second Circuit rules on Class Counsel's appeal. Accordingly, this Court cannot find that attorneys' fees have been "ascertained in a meaningful way." *See Bonjorno*, 494 U.S. at 836.

## *CONCLUSION*

For the reasons set forth above, this Court adopts Magistrate Judge Boyle's Report and Recommendation dated December 8, 2009, except with respect to those portions which recommended awarding Ms. Herzberg $350 per hour and reducing those billing entries encompassing Mr. Mitzner's travel expenses by both 50% and 15%. This Court will reduce Ms. Herzberg's hourly rate from $350 to $300, but will increase Ms. Herzberg's billable hours from 10 to 10.625 in order to correct a mathematical error. This Court will reduce the six entries containing Mr. Mitzner's travel expenses, constituting 37.2 hours, by 50%, and shall apply the 15% reduction only with respect to the remaining 1801.88 hours. Accordingly, plaintiffs' Class

Counsel are hereby awarded $874.998.30 in attorneys' fees and $9,817.31 in expenses, for a total

of $884,815.61.

**SO ORDERED.**

s/ SLT
SANDRA L. TOWNES
United States District Judge

Dated: January 7 , 2010
Brooklyn, New York